**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Frank O. BECKER, Defendant– Appellant.**

**No. 91–2737.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1992.

Decided June 5, 1992.

Barry R. Elden, Richard K. Kornfeld (argued), Asst. U.S. Attys., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Darrell McGowen (argued), Malachy Coghlan, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, CUDAHY and POSNER, Circuit Judges.

CUMMINGS, Circuit Judge.

In March 1989 defendant Frank O. Becker of Monee, Illinois, was subjected to a twelve-count indictment with respect to tax offenses. Six felony counts charged him with attempting to evade income taxes under 26 U.S.C. § 7201 and six misdemeanor counts with willful failure to file tax returns in violation of 26 U.S.C. § 7203. He was convicted by a jury on all counts and received a total sentence of six years' imprisonment, a fine of $100,000, costs of prosecution and three years' supervised release.

During the 1982–1987 tax years involved in the indictment, Dr. Becker earned more than $850,000 from practicing medicine. During these years, the defendant was a physician working at Christ Hospital in Oak Lawn, Illinois. He earned $110,000 to $130,000 per year as a salaried physician on that hospital's staff. He also delivered lectures at the Cook County, Illinois, graduate school of medicine and earned honoraria from $390 to $2,200 per year from 1982 to 1987. During that time he also earned $18,000 to $35,000 per year from his private practice. Although he owed more than $300,000 in income taxes, Becker did not file a single tax return from April 1983 to April 1987.

In his private practice, defendant had John Mock & Associates ("JMA") bill his patients. JMA would either bill the patient or the patient's insurance company, and the payment checks would be remitted to JMA, which would deposit them into defendant's bank account. After January 1982, defendant directed JMA to send the payment checks to him, unendorsed and undeposited. From 1982 through 1984 he eliminated each of his bank accounts and deposited all his paychecks into National Commodity Exchange ("NCE"), a Denver, Colorado, socalled "warehouse bank" in which accounts are identified only by an account number. NCE's customers would deposit checks into numbered accounts and then at their direction NCE would write checks on their behalf. These checks were issued in the name of NCE or one of its subsidiaries. From 1985 through 1987 the defendant deposited the bulk of his income checks into his son Steven Becker's checking account at the Peotone Bank in Illinois and defendant's family used that account to pay its bills.

The evidence showed that defendant had his employer, Christ Hospital, stop withholding any federal tax from his earnings after 1983. Although he retained an accountant to file his tax returns for 1979–1981, he ceased using the accountant after the 1981 tax year. He testified that he ceased filing income tax returns or paying any income taxes beginning in 1983 because he had determined that he was not required to do so. He concluded that the amounts he received from his medical practice did not constitute gross income and testified that he consulted with attorney Robert L. Collins who confirmed his interpretation.[1] In addition, he said that he considered himself an independent contractor after 1983 so that he instructed Christ Hospital not to withhold federal taxes from his earnings.

Defendant admitted that he received checks from various patients for medical services and endorsed them to NCE and that he endorsed other such checks to his son Steven Becker for deposit in the son's bank account. He said that he did not keep any records of his transactions with JMA or NCE.

At the close of the evidence the jury convicted Becker on all twelve counts. On appeal he has raised ten grounds for reversal of his convictions. Alternatively, he advocates a remand for resentencing. We consider the points advanced in the order presented by defendant.

---

1. Collins incredibly testified that in late 1982 he advised the defendant that as an independent contractor, any money he received constituted an equal exchange of services for money and was therefore not income.

1. Government's alleged failure to introduce evidence of attempted tax evasion under felony counts 1, 3, 5, 7, 9 and 11.

■ The attempt counts allege that during the years 1982–1987 defendant earned an annual taxable income of approximately $130,000 and that he attempted to defeat the income tax owed in those years by failing to file tax returns, causing his employer to stop withholding federal income tax from his earnings, and endorsing his earnings checks to other individuals and institutions. Defendant argues that although the indictment charges him with acts occurring on or about April 15 of each of the tax years in question, the government introduced acts occurring before April 15 as proof of the attempts. A similar argument was rejected in *United States v. Conley*, 826 F.2d 551, 559 (7th Cir.1987), where we noted that "whether actually occurring in April or not, the defendant's activities were all related and directed toward his annual ritual of avoiding payment of his tax for that particular year." As in *Conley*, this indictment was sufficient to inform the defendant of the felonies with which he was charged, and we decline to adopt defendant's hypertechnical argument.

2. Alleged constructive amendment of the indictment.

■ Defendant next argues that the government constructively amended the six felony counts charging him with attempting to evade and defeat an income tax due because it was permitted to prove his attempts to evade *payment* of tax. This argument is specious because the counts in question charged Becker with attempt to evade and defeat income tax not only by failing to file the income tax returns before April 15 but also by failing to pay the tax due. Indeed, evading income taxes and failing to pay them are not two separate crimes. "Section 7201 creates only one crime: tax evasion." *United States v.*

*Dunkel*, 900 F.2d 105, 107 (7th Cir.1990), certiorari granted, judgment vacated and remanded on another ground, —— U.S. ——, 111 S.Ct. 747, 112 L.Ed.2d 768.[2] As we repeat, all of the attempt counts clearly set forth the elements of the charged offenses and therefore no constructive amendment has occurred.

3. Permitting witness speculation and failure to give attendant instruction.

Defendant argues that the IRS agent's testimony that he reviewed "all the income that we had come up with" and "I can't be sure that I had all of the income" impermissibly told the jury that the government was unable to come up with all of defendant's income sources and amounts. The first statement, however, is clearly harmless. Our review of the record indicates that the second statement was retracted after an objection, and the agent's actual testimony was, "I wasn't sure that we had all of the *expenses* to which Dr. Becker was entitled to, nor the verification for some of the *expenses* that he was entitled to" (Tr. 297; emphasis supplied). This testimony could not have caused the jury to make impermissible inferences about possible hidden income.

Defendant also argues that the district judge should have given a cautionary instruction regarding this agent's testimony that deposits in defendant's checking account exceeded his recorded income, citing to net worth method cases.[3] Here the government proved both the amount of income the defendant earned between 1982 and 1987 and the sources of that income. Since the present case was not based on a net worth method of proving income, it was unnecessary for the court to give a cautionary instruction that such a method is itself only an approximation.

In his closing argument, the prosecutor mentioned $32,000 in unaccounted-for check deposits in Steven Becker's checking

---

**2.** On the remand in *Dunkel*, this Court did not deviate from the point on which we rely here. *United States v. Dunkel*, 927 F.2d 955, 956 (1991); see also *United States v. Masat*, 896 F.2d 88, 91 (5th Cir.1990) ("In truth, there is one crime, the evasion of taxes").

**3.** *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; *United States v. Tolbert*, 367 F.2d 778 (7th Cir.1966); *United States v. Hall*, 650 F.2d 994 (9th Cir.1981).

account by asking "Where are they? We don't know." (Tr. 612). It was permissible for the prosecutor to point out that Steven Becker's story that $25,000 out of the $32,-000 came from a family friend who asked the Beckers if she could deposit some money into their accounts was uncorroborated. This was a mild characterization of such suspect testimony and certainly was not improper. *United States v. Hernandez,* 865 F.2d 925, 929 (7th Cir.1989).

4. Jury instructions on "attempts."

■ Defendant argues that the instructions given below relating to the Section 7201 attempt charge erroneously permitted conviction for an act of omission. The jury was instructed that the government must prove, as one of the elements of the attempt charge, that the defendant willfully did one of the acts charged in the indictment. The relevant portion of the indictment alleged that Becker committed the following three acts: 1) failing to file an income tax return and pay taxes, 2) causing his employer to stop withholding, and 3) endorsing earnings checks to other parties. Importantly, the jury was also given an "affirmative act" instruction: "[T]he government must prove beyond a reasonable doubt at least one alleged affirmative act * * *. * * * [Y]ou must be unanimous that the defendant committed a particular act for which the purpose, at least in part, was to evade or defeat a tax owing."

Defendant correctly points out that the failure to file returns or pay tax is an act of omission that is not an affirmative act and thus is not sufficient to constitute an attempt under 26 U.S.C. § 7201. *Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418; *United States v. Jungles,* 903 F.2d 468, 475 (7th Cir.1990). The jury, however, was instructed that it must find that defendant committed a particular affirmative act. Although the jury instructions were not a model of clarity, defendant at trial proposed instructions

that were clearly incorrect in requiring the government to prove *all* the acts alleged in the indictment. Defendant's argument on appeal that it was error for the judge not to state explicitly that failure to file a return is not an affirmative act, see *United States v. Masat,* 896 F.2d 88 (5th Cir.1990),[4] was not made below and is therefore reviewed for plain error. Plain error must be of such magnitude that it probably changed the outcome of the trial or otherwise resulted in a miscarriage of justice. *United States v. Canino,* 949 F.2d 928, 940–941 (7th Cir.1991), certiorari denied, — U.S. ——, 112 S.Ct. 1701, 118 L.Ed.2d 410. Considering the instructions as a whole, *United States v. Requarth,* 847 F.2d 1249 (7th Cir.1988), as well as the evidence introduced at trial, we find no plain error on this point. See *United States v. Mal,* 942 F.2d 682 (9th Cir.1991) (similarly concluding that there was no plain error where jury instructions failed to define further what could not be considered an affirmative act).

5. Refusal to instruct the jury on defense of reliance on advice of counsel.

■ Defendant asked the court to give a theory of defense instruction stating that defendant could not have the necessary criminal intent if his actions were based upon the advice of counsel. It is of course true that "the defendant in a criminal case is entitled to have the jury consider any theory of the defense which is supported by the law and which has some foundation in the evidence, however tenuous." *United States v. Walters,* 913 F.2d 388, 391 (7th Cir.1990) (citations omitted). Here there is no evidence that supports the giving of the instruction. As Judge Zagel noted,

> there was no testimony that defendant "told the lawyer everything about your situation and that the lawyer gave you very specific advice and that you followed that specific advice to the letter" (Tr. 538).

Instead the testimony showed that defendant talked to lawyer Robert L. Collins about defendant's point of view on income tax law. According to his own testimony,

---

4. We note that in *Masat* the jury twice during their deliberations asked the judge to explain the difference, if any, between "tax evasion" and "refusing to pay taxes." The Fifth Circuit concluded that the judge did not adequately respond to the jury's queries. There is, of course, no such indication of jury confusion here.

the defendant had already independently concluded after research that the exchange of his services for money did not generate any income for himself because of the quid-pro-quo nature of the transaction. Collins merely confirmed the "soundness" of this interpretation. The proposition is so preposterous, however, as to be unworthy of belief. The testimony of defendant and Mr. Collins did not indicate that defendant's actions were taken in good faith based upon the advice of counsel, so that such an instruction was unwarranted.[5] Finally, defendant's theory of reliance on counsel's advice is contradicted by taxpayer's concealment of income during the taxable years.

### 6. District court's "good faith belief" instruction.

Although defendant argues that the district court erred in not giving his "good faith" instruction in compliance with *Cheek v. United States*, 498 U.S. ——, 111 S.Ct. 604, 112 L.Ed.2d 617, his own counsel informed the district court that the government's instruction 19, which was given to the jury, "is essentially a correct statement of the law." (Tr. 520). Instruction 19 stated that

> A defendant does not act willfully if he believes in good faith that he is acting within the law or that his actions comply with the law. Therefore, if the defendant actually believed that what he was doing was in accord with the tax statutes, he cannot be said to have had the criminal intent to wilfully evade or defeat taxes or to wilfully fail to file tax returns. This is so even if defendant's belief was not objectively reasonable as long as he held the belief in good faith. Nevertheless, you may consider whether the defendant's belief about the tax statutes was actually reasonable as a factor in deciding whether he held that belief in good faith.

We agree with defendant's counsel that this instruction is an accurate summary of *Cheek* that appropriately focused the jury's attention on whether the defendant had a good-faith belief he was acting lawfully.

### 7. Alleged violations of Speedy Trial Act.

The Speedy Trial Act ordinarily requires that a defendant pleading not guilty be brought to trial within 70 days of arraignment (18 U.S.C. § 3161(c)(1)), but periods of time dedicated to preparation of pre-trial motions and deliberations thereon are excluded. Judge Zagel determined that there was no violation of the Act because of proper exclusions. He thought that defendant forfeited the right to trial in 70 days by filing, through counsel and on his own, "a large number of motions in a relatively disorderly fashion." (App. 132).

The following three periods of time relied upon by defendant for running the Speedy Trial clock were properly excluded by the district judge since ascribable to defendant:

A. August 11, 1989, through August 20, 1989. On July 14, 1989, defendant filed a motion for bill of particulars and a motion for another extension of time to file more motions. Both were denied August 10. He filed fifteen additional motions on August 21, 1989, which the district court accepted on August 24, simultaneously ordering the government to respond. By allowing defendant to file these additional pre-trial motions the judge in effect granted defendant's July 14th extension motion. Therefore, the exclusion for the running of time continued during this contested period.

B. October 2, 1989, through January 24, 1990. On August 21, 1989, defendant filed a motion to disqualify Judge Zagel. This motion was denied on January 24, 1990. Under the Speedy Trial Act, a district judge may normally take no more than 30 days to decide a pre-trial motion. § 3161(h)(1)(J). In this case, however, defendant filed fifteen substantive motions on August 21, 1989. In such a situation, the 30-day rule does not apply, and the judge need only decide the motions with reasonable prompt-

---

**5.** Defendant also argues that he was improperly cut off from redirect examination of Collins. Since lawyer Collins testified that he believed defendant had already begun his failure to file income tax returns before they met, it was appropriate for the district judge to sustain an objection to returning again to this subject. In any event, any error on this point would be harmless in light of the record as a whole.

ness. "We are unwilling to impute to Congress a purpose, nowhere stated or even hinted at by it, to require a judge to decide a collection of pretrial motions within 30 days, no matter how many there are." *United States v. Tibboel*, 753 F.2d 608, 612 (7th Cir.1985); see also *United States v. Nesbitt*, 852 F.2d 1502, 1514 (7th Cir.1988), certiorari denied, 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798.

Because of the circumstances of this case, we conclude that the district judge acted with reasonable promptness. We note initially that a motion to disqualify a judge is a motion that typically must be given more than an ordinary amount of thought. The basis of defendant's motion in this case was that Judge Zagel was a named defendant in an unrelated civil action where defendant Becker's attorney represented the plaintiffs. This allegation required serious inquiry into the nature of the case in which Judge Zagel had been sued and its relationship to the case over which Judge Zagel was presiding.

In addition, defendant's delaying conduct in this case was a primary cause for any seemingly late rulings by the judge. Briefing for the fifteen motions was not completed until October 5, 1989. After denying defendant's motion to disqualify at the January 24, 1990, status hearing, Judge Zagel indicated that he would be ready to rule on the remaining motions within a week or two. Defendant's counsel objected to any "hurried rulings" in this "complex case." (Tr. 69). The record indicates that defendant's counsel communicated to Judge Zagel that he was hopeful that a plea agreement might be arranged when the new United States Attorney took office.

On February 12, 1990, Judge Zagel ruled that a hearing was necessary on the evidence suppression issue. This hearing was held, after several delays either caused or approved by defendant, on June 20, 1990, and the district court held on July 31, 1990, that the evidence would not be suppressed.

It is important to note that the defendant filed 21 additional motions after January 24, 1990, and before trial in April 1991.[6] Most of these motions were disposed of within 30 days. On December 17, 1990, defendant's counsel indicated that he was forced to withdraw from the case. On that date, Judge Zagel again stated that he was ready to rule on all pre-trial motions, but then stated he would wait until defendant was able to procure a new attorney. Because of the volume of motions filed by defendant, the time between October 2, 1989, and January 24, 1990, was properly excluded.

C. March 11, 1991, through March 18, 1991. On March 11, 1991, defendant filed a motion requesting the court to rule on pending motions, so that the short time the court took to consider it is also excludible.

In sum, defendant has not persuaded us that the Speedy Trial Act was violated during the three periods specified. Nevertheless district judges should dispose of motions as promptly as possible to observe the spirit of this legislation and thus avoid cries of error.

8. Refusal to instruct the jury that labor and money are "property" under income tax laws.

The defendant requested an instruction that his labor constituted property equal to the money he received, so that no income tax was due. However, he cites to no case supporting an instruction that states that wages are not income, and indeed we have already held on numerous occasions that defendant's contention is ridiculous. *United States v. Dube*, 820 F.2d 886, 891 (1987); *United States v. Koliboski*, 732 F.2d 1328, 1329 n. 1 (1984). As noted above, the court gave a proper instruction regarding defendant's good faith as required by Cheek. To have given the instruction requested by defendant would have been erroneous under our well-established case law.

---

**6.** The defendant filed motions on the following dates: February 15, 1990; June 20, 1990; July 18, 1990 (2 motions); September 10, 1990; November 9, 1990; December 4, 1990; December 12, 1990 (2 motions); December 27, 1990 (2 motions); January 31, 1991 (7 motions); March 11, 1991; March 19, 1991.

**9. Records obtained by government through IRS administrative summonses were properly received.**

Defendant argues that the district court should have suppressed evidence obtained by the government through administrative summonses allegedly after institutional abandonment of civil purpose. 26 U.S.C. § 7602 authorizes the IRS to issue administrative summonses involving both the civil and criminal elements of the tax laws. *United States v. LaSalle National Bank,* 437 U.S. 298, 300, 309, 98 S.Ct. 2357, 2363, 57 L.Ed.2d 221. The IRS oversteps its bounds if it uses the summons (for any purpose, civil or criminal) after referring the case to the Justice Department, 26 U.S.C. § 7602(c), or if it uses the summons solely to gather evidence for a criminal prosecution before referring the case. *United States v. Michaud,* 907 F.2d 750, 754 (7th Cir.1990) (en banc).

Here the summonses at issue were served in 1986, and defendant's case was not referred to the Justice Department for prosecution until January 1988. Thus there is no violation of the bright-line rule established by Section 7602(c). Since defendant has not otherwise met his burden of showing that the IRS had "no civil purpose whatsoever" here, *Michaud,* 907 F.2d at 754, the evidence obtained by the summonses was properly received.

**10. Government's closing argument.**

Defendant complains that an improper statement was made to the jury during the prosecutor's closing argument. At the trial, defendant's accountant, Richard Podgorski, testified that defendant believed that the Constitution said it was unconstitutional to be paying income taxes on his earnings. This was paraphrased by the prosecutor during the government's rebuttal argument that "Podgorski told you [jurors] that defendant told him that the tax laws were unconstitutional." This was a harmless summation of Podgorski's testimony and perfectly proper. *United States v. Doyle,* 771 F.2d 250, 258 (7th Cir.1985).

**11. Propriety of sentence imposed.**

██ The district court sentenced Becker to a total of six years' imprisonment, three years' supervised release, $100,000 fine, and cost of prosecution. This was in accord with the Sentencing Guidelines. The offense level was increased by two points because the district court found that Becker's testimony was perjurious. As Judge Zagel said:

> I find in fact the defendant perjured himself in a gross, utterly unconvincing and blatant fashion. * * * He is simply not to be believed * * * and his testimony was offered in a manner and form which I think is contemptuous of the ability of both the jury and the Court to determine the truth. (App. 17).

The record supports this finding, and the two-level adjustment under Section 3C1.1 of the Guidelines was in no way clear error, which is the standard of review we apply. *United States v. Teta,* 918 F.2d 1329, 1332 (7th Cir.1990).

██ Judge Zagel also increased the base offense level by two points after finding that defendant employed "sophisticated means" within Guidelines Section 2T1.2(b)(2) to cover his crimes. We also review this finding for clear error. As previously noted, Becker used a so-called "warehouse bank" to hide his assets under an account identified not by Becker's name or social security number but only by an arbitrary number. In addition, he eliminated all bank accounts in his name and deposited his earnings in his son's account. As the district judge found, these steps were taken to make it "difficult, if not impossible, to discover his income and to inquire into his finances * * *." (App. 16–17). This finding supported the two-level increase under Section 2T1.2(b)(2) as the use of sophisticated means to impede the government's discovery of crimes.

██ Consecutive sentences were imposed for defendant's violations of 26 U.S.C. §§ 7201 and 7203. Defendant received three years' imprisonment on the tax evasion counts under Section 7201 and three years on the willful failure to file tax return counts under Section 7203. He rea-

sons that the convictions under the failure to file tax returns (Section 7203) were lesser included offenses subsumed by the convictions for tax evasion under Section 7201. Whether Section 7203 is a lesser-included offense of Section 7201 is a question of law subject to *de novo* review on appeal. *Teta*, 918 F.2d at 1329. The law on this subject, however, is well settled in this Circuit. Section 7203 does not require

> an affirmative act, whereas a § 7201 offense requires some affirmative act. Failure to file without more will not sustain a conviction under § 7201. (citation omitted). Conversely, while someone attempting to evade or defeat tax will often fail to file a return, this is not necessary for the completion of the offense * * *. Finally there is no indication that Congress did not intend these two statutory provisions to be separate offenses.

*United States v. Foster*, 789 F.2d 457, 460 (7th Cir.1986), certiorari denied, 479 U.S. 883, 107 S.Ct. 273, 93 L.Ed.2d 249. We have consistently adhered to *Foster*.[7]

There will be no remand for resentencing.

Defendant's conviction and sentence are affirmed.

---

**7.** See *United States v. Defazio*, 899 F.2d 626, 636 (7th Cir.1990); *United States v. Buckner*, 830 F.2d 102, 104 (7th Cir.1987); *United States v. Davenport*, 824 F.2d 1511, 1519 (7th Cir.1987).