**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Arnold W. HILGEFORD,
Defendant–Appellant.**

No. 92–4136.

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1993.

Decided Oct. 22, 1993.

Andrew B. Baker, Jr., Asst. U.S. Atty., Dyer, IN, Robert N. Trgovich (argued), Fort Wayne, IN, for plaintiff-appellee.

Linda M. Wagoner, Fort Wayne, IN (argued), for defendant-appellant.

Before BAUER and KANNE, Circuit Judges, and ALDISERT, Senior Circuit Judge.*

KANNE, Circuit Judge.

Hard times and the loss of the family farms in Jay County, Indiana, produced a downward spiral of more desperate and more irrational behavior by the defendant, Arnold W. Hilgeford. By 1984 he had borrowed over one million dollars from Peoples Bank and the Farmer's Home Administration (FmHA) using the two farms he owned as security for the debt. In that year financial problems engulfed the defendant and the bank foreclosed on the mortgage it held on one of his farms. Peoples Bank then bought the farm at the foreclosure sale and the defendant was evicted.

In April, 1985, the defendant brought a quiet title action in federal district court. It was involuntarily dismissed. Several days after the dismissal he filed another quiet title action in federal court, claiming superior title to the land, based on a "land patent." This action was dismissed by the district court for lack of subject matter jurisdiction, and defendant was sanctioned for bringing a patently frivolous suit. *Hilgeford v. Peoples Bank,* 607 F.Supp. 536 (N.D.Ind.1985).

The defendant appealed the second dismissal and sanction, and again met with disappointment. In October of 1985 we concluded that the defendant's appeal was frivolous and was undertaken for the purposes of delay and harassment. *Hilgeford v. Peoples Bank,* 776 F.2d 176, 179 (7th Cir.1985). We sanctioned the defendant by assessing a fine of five hundred dollars.

In July, 1986, the defendant brought another suit in federal court against Peoples Bank alleging that he had been defrauded. This suit, like its predecessors, was found to be meritless. The court stayed the case pending defendant's payment of his fines for his earlier frivolous cases. *Hilgeford v. Peoples Bank,* 110 F.R.D. 700 (N.D.Ind.1986). Soon thereafter the defendant moved back to the farm, and was again evicted. The defendant then filed a writ of habeas corpus in federal court, directed against the bank and its personnel.

In December, 1986, the district court dismissed both the fraud claim, *Hilgeford v. Peoples Bank,* 113 F.R.D. 161 (N.D.Ind. 1986), and the habeas corpus petition, *Hilgeford v. Peoples Bank,* 652 F.Supp. 230 (N.D.Ind.1986) and imposed sanctions on the defendant of a one thousand dollar fine for each action. The court noted that all four of defendant's lawsuits had been groundless, and were intended to harass Peoples Bank. It noted also that defendant had fabricated court documents, including a purported judgment against Peoples, based on a "jury trial" which had never occurred.

In January, 1986, the United States filed a foreclosure action on behalf of FmHA against the defendant's second farm. The defendant responded by attempting to file with the federal court an "Application for Writ of

* The Honorable Ruggero J. Aldisert, Senior Circuit Judge for the Third Circuit, is sitting by designation.

Possession Ex Parte," and a request for a temporary restraining order, both supported by "affidavits" which were filled with inaccuracies and outright lies. The district court refused to accept these documents for filing. The defendant then sought civil arrest warrants for persons who had "violated" the restraining order he had unsuccessfully sought. Again his actions were thwarted.

Having hit a stone wall in federal court, the defendant changed his course of conduct in 1987. He began a different campaign against various persons involved with the loss of his farms, and against those who had purchased one of the farms at the foreclosure sale. This conduct by the defendant consisted primarily of sending "bills" showing large sums of money due him. These were mailed virtually to everyone who had been involved in some way in his financial misfortunes. The defendant generated an immense amount of paperwork in this process. We describe only representative examples below.

In 1988, the new owners of the farm began to receive "rent due" bills for their use of what the defendant still claimed to be his property. He sent these "bills" on a regular basis. These amounts allegedly due him as "accounts receivable" were included on his 1988 tax return.

The defendant also sent "bills" to People's Bank commencing the same year. He claimed that he had satisfied his debt to them in 1986. The bills showed that the bank owed the defendant the amount the bank received in the foreclosure action, plus interest. The amounts shown on these "bills" were included by the defendant as accounts receivable on his 1988 tax return.

The defendant sent like "bills" to employees of the Jay County Auditor's office and Sheriff's Department, and to employees of the FmHA. He claimed all of these amounts purportedly owed to him as accounts receivable on his 1988 or 1989 tax returns.

The total amount defendant claimed to be owed as accounts receivable, $14,282,361.42. He reported on his 1988 tax return that he had paid this amount as "non-employee compensation." He listed as "taxes withheld" approximately the same amount. On this basis he filed a claim for a tax refund of $10,283,401.75.

Similar "billing" and fanciful calculation led the defendant to file a claim, in 1989, for a refund for overpayment of federal income tax of $23,773,227.21.

Not surprisingly the defendant was charged with mail fraud and filing false tax returns. He was convicted and sentenced to 12 months imprisonment.

I. Jurisdiction

We are again faced with a "shop worn" argument of the tax protester movement. The defendant in this case apparently holds a sincere belief that he is a citizen of the mythical "Indiana State Republic" and for that reason is an alien beyond the jurisdictional reach of the federal courts. This belief is, of course, incorrect. We addressed the same issue in *United States v. Sloan*, 939 F.2d 499 (7th Cir.1991). Defendant Sloan argued that he was a citizen of the state of Indiana, but not a citizen of the United States and therefore not subject to its laws. We discussed this proposition fully and concluded that it was "simply wrong." *Id.* at 501.

In a factually similar case, a recent appeal on the same basis was handled with appropriate despatch by the Eighth Circuit in *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir.1992). Defendant therein claimed to be a citizen of the "Republic of Idaho" and not a U.S. citizen, and therefore outside the jurisdiction of the United States.

The *Jagim* court found this issue to be "completely without merit" and "patently frivolous" and rejected it "without expending any more of this Court's resources on [its] discussion." *Id.* We do the same.

II. The "willfulness" element instruction

■ The defendant claims that the court's instructions to the jury erroneously stated the law regarding "willfulness," the mental state which had to be proven to convict him of filing false tax returns under 26 U.S.C. § 7206(1). He also argues that the instruction amounted to a direction to the jury to convict.

Jury instruction 12 is a statement of the standard of culpability required to convict a defendant.[1] The other relevant facts in the case are either undisputed or have been overwhelmingly demonstrated against the defendant. The trial judge rightly described instruction 12 as "the heart of the case."

During the conference on jury instructions, the defendant objected to the court's proposed instruction 12 and tendered an alternative instruction. He also gave a specific reason for his objection to the court's proposed instruction.

The paragraph of instruction 12 to which defendant objected reads as follows:

The purpose of the willfulness component is to avoid penalizing taxpayers who make innocent mistakes caused by the complexity of the tax code. A defendant does not act willfully if he believes in good faith that he is acting within the law or that his actions comply with the law. This is so even if the defendant's belief was not objectively reasonable as long as he held the belief in good faith. Nevertheless, you may consider whether the defendant's belief about the tax statutes was actually reasonable as a factor in deciding whether he held that belief in good faith.

The defendant argued that the paragraph is "irrelevant" because "this case is not about whether or not the tax code is complex." The defendant clarified this objection by pointing specifically to the language regarding the purpose of the willfulness requirement. He claimed that this language was "tantamount [to] directing a verdict for the government." The defendant also argued that "willfulness is an element of the crime ... [which] should not be watered down or diminished" by a statement of the historical origins of the requirement.

The defendant focuses on the language in this paragraph regarding the reasonableness of his belief that he had no duty to pay income taxes. He argues that if he could show that he had such a good-faith belief,

---

1. Instruction 12, in its entirety, reads as follows:

An act is done willfully if done voluntarily and intentionally and with the specific intent to do something the law forbids; that is to say with a purpose either to disobey or disregard the law.

Conduct is not willful if it is based upon accident, mistake, inadvertence or due to a good faith misunderstanding as to the requirements of the law.

While good faith has no precise meaning, it encompasses, among other things, an honest intention, an absence of malice and an honest intention to abstain from taking any unconscientious advantage of another.

As a general rule, ignorance of the law or mistake of law is no defense to a criminal prosecution.

In order to convict the defendant, you must find that the government has proven that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty.

If the government proves actual knowledge of the pertinent legal duty, the prosecution, without more, has satisfied the knowledge component of the willfulness requirement.

The purpose of the willfulness component is to avoid penalizing taxpayers who make innocent mistakes caused by the complexity of the tax code. A defendant does not act willfully if he believes in good faith that he is acting within the law or that his actions comply with the law. This is so even if the defendant's belief was not objectively reasonable as long as he held the belief in good faith. Nevertheless, you may consider whether the defendant's belief about the tax statutes was actually reasonable as a factor in deciding whether he held that belief in good faith.

The reasonableness of a belief is a factor for the jury to consider in determining whether a defendant actually held a belief and acted upon it. The more farfetched a belief is, the less likely it is that a person actually held or would act upon that belief.

A defendant who knows what the law is and who disagrees with it does not have a bona fide misunderstanding defense. A persistent refusal to acknowledge the law does not constitute a good faith misunderstanding of the law. One is not immune from criminal prosecution if he knows what the law is but believes that it should be otherwise, and therefore violates it.

In determining the issue as to willfulness, you are entitled to consider anything done or omitted to be done by the defendant and all facts and circumstances in evidence which may aid in the determination of his state of mind. It is obviously impossible to ascertain or prove directly the operations of the defendant's mind; but a careful and intelligent consideration of the facts and circumstances shown by the evidence in any case enables one to infer what another's intentions were in doing or not doing things. With the knowledge of definite acts, we may draw definite logical conclusions.

Knowledge and belief are characteristically questions for the factfinder, in this case you, the jury.

then he could not have been acting willfully and hence he should not have been convicted.

The instruction given to the jury states that such a belief need not be objectively reasonable to be held in good faith. Defendant's proposed instruction contained virtually identical language. However, the instruction which was actually given contained a further sentence which specifically allowed the jury to consider the reasonableness of defendant's asserted belief that he was not violating the law when determining whether or not it accepts his claim that he held his belief in good faith.

■ Defendant's appeal on this issue is reduced to a claim that the inclusion of any language regarding the objective reasonableness of his belief prejudiced him and is grounds for reversal.

*Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) held that "[w]illfulness, as construed by our prior decisions in criminal tax cases, requires the government to prove that the law imposed a duty on the defendant, that defendant knew of this duty and that he voluntarily and intentionally violated that duty." 498 U.S. at 201, 111 S.Ct. at 610. To show willfulness, the government must show awareness of a legal duty.

*Cheek* also holds that "a claimed good-faith belief" does not have to be "objectively reasonable if it is to be considered as possibly negating the government's evidence purporting to show a defendant's awareness of the legal duty at issue." 498 U.S. at 203, 111 S.Ct. at 611. Both parties agreed to language in the instruction regarding this holding.

*Cheek* holds further that "[o]f course, the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the government has carried its burden of proving knowledge." 498 U.S. at 203–04, 111 S.Ct. at 611–12. The instruction regarding the reasonableness of defendant's belief is clearly derivable from this language in *Cheek.*

In *United States v. Benson,* 941 F.2d 598 (7th Cir.1991), we held that "the reasonableness of a belief is a factor for the jury to consider in determining whether a defendant actually believed and acted on it. The more farfetched a belief is, the less likely it is that a person actually held or would act on that belief." *Id.* at 614 (citing to *Cheek,* 498 U.S. at 203–04, 111 S.Ct. at 611–12).

In *United States v. Becker,* 965 F.2d 383 (7th Cir.1992), we analyzed a jury instruction substantially identical to the one complained of here. The instruction in *Becker* stated that defendant's good faith belief that he complied with the law, even if his belief was objectively unreasonable, defeats the element of willfulness. The instruction in *Becker* concluded with this sentence: "Nevertheless, you may consider whether the defendant's belief about the tax statutes was actually reasonable as a factor in deciding whether he held that belief in good faith." *Id.* at 388. This sentence mirrors the sentence to which defendant objects in this case. We concluded in *Becker* that the instruction was a correct statement of the law. *Id.*

Finally, we note that in the recent appeal of the trial-on-remand of *United States v. Cheek* we ruled on this identical issue. The jury instruction contained the following language: "... [Y]ou may consider whether the defendant's stated belief about the tax statutes was reasonable as a factor in deciding whether he held that belief in good faith." *Cheek,* 3 F.3d 1057, 1063 (7th Cir.1993). We found that this instruction complied with *Becker* and with the Supreme Court's ruling in *Cheek.*

In conclusion, defendant was not prejudiced by the court's decision to use the contested paragraph of instruction 12. It is a correct statement of the law. There was no error.

## III. Admission of evidence

■ In the years prior to his conviction in this case, the defendant generated a blizzard of complicated and groundless litigation, primarily involving his fruitless attempts to regain his two farms. Evidence relating to these various trial and appellate proceedings

which he had initiated prior to his indictment in this case was admitted over the defendant's objection.

The defendant claims that admission of the evidence of this prior litigation is a violation of Federal Rule of Evidence 404(b), commonly known as the "prior bad acts rule."

Rule 404(b) states that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

The defendant points out that the purpose of the rule is to see to it that the jury, when it convicts, does so for the offense charged and not for general bad character. This is a fair statement of the rule's purpose, and the first sentence of the rule serves this purpose by requiring exclusion of certain evidence. The defendant argues that the disputed evidence does not fall into any of the exceptions provided in 404(b).

The government responds that the evidence of trial and appellate court proceedings initiated by defendant was admitted not to disparage his character, but for two other reasons. First, the government claims that the evidence was used as proof that defendant's conduct was willful, which is a basic element of the crime with which he is charged. Thus, the government argues, the disputed evidence is not even subject to Rule 404(b) at all because it is directly probative of the crime with which defendant is charged. Second, the government claims that even if the evidence is subject to Rule 404(b), it falls within several of the exceptions listed in the rule. The government notes also that even if the admission of the evidence were error, it is not prejudicial because the other evidence against defendant was overwhelming.

■ When deciding if the "other acts" evidence was admissible without reference to Rule 404(b), we must determine whether such evidence was "intricately related to the facts of the case" at hand. *United States v. Hargrove*, 929 F.2d 316, 320 (7th Cir.1991)

*See also United States v. Carrillo*, 561 F.2d 1125 (7th Cir.1977) (evidence of conduct which might have been the basis for state court prosecution admissible because it was "inextricably tied to basic elements of proof of filing false tax returns"). If we find the evidence is so related, the only limitation on the admission of such evidence is the balancing test required by Rule 403. This test permits the exclusion of relevant evidence if its prejudicial effect substantially exceeds its probative value. *Id.*

Had the trial court been required to decide whether the evidence was admissible under Rule 404(b), it would have had to apply a more elaborate, four part test which we set forth in *United States v. Zapata*, 871 F.2d 616, 621 (7th Cir.1989). However, the government is correct as to the status of the evidence objected to, so the trial court had only to apply the simpler balancing test.

■ When reviewing a district court's decision to admit evidence, we will reverse the court's decision only when we find an error which rises to the very serious, and uncommon, level of an abuse of discretion. Abuse of discretion only occurs when no reasonable person could take the view of the trial court. *Libby by Libby v. Illinois High School Assoc.*, 921 F.2d 96 (7th Cir.1990).

The defendant's prior court proceedings established that he was aware that he no longer had title to the two farms which he had lost through foreclosure. The focus of the defendant's campaign of litigation was an attempt to regain title to the lost property.

The defendant claimed that he owned the property on his 1988 and 1989 tax returns. This claim appeared in the form of an "accounts receivable" figure he included on the returns. These "accounts receivable" were based on bills defendant sent to the proper owners of the farms, and to employees of Peoples Bank, and others who were involved with the foreclosure and sale of his two farms. These bills had no basis in fact. None of these persons owed the defendant any money.

The defendant maintained his pretense of ownership, despite the failure of numerous legal challenges to the loss of his property.

Defendant included the amounts which he claimed were due to him when he falsely reported his income to the I.R.S. in 1988 and 1989. The government argues that the record of defendant's failed litigation proves that he knew that the returns, premised as they are on his ownership of the property, were false.

■ One of the necessary elements the government was required to prove to convict defendant of filing false tax returns was the elusive mental state of willfulness. Willfulness, as defined for purposes of criminal violations of the tax code, requires that the defendant had knowledge that he had a duty to pay, and that he voluntarily and intentionally violated that duty. *Cheek,* 498 U.S. at 200, 111 S.Ct. at 610. Evidence demonstrating that a defendant knew he did not own certain property, when he submitted a tax return premised on a claim that he did own the property, goes directly to this element.

The evidence of the defendant's prior litigation established that he knew that the "accounts receivable" figures he used on his 1988 and 1989 tax returns were false, and that he therefore acted voluntarily and intentionally—and thus willfully—in filing them. The evidence of prior litigation is therefore probative of an element of the government's case. The evidence of defendant's prior conduct is "intricately related" or "inextricably tied" to the facts in this case. It is therefore not subject to Rule 404(b).

It is left to the trial court to apply Rule 403 and determine whether or not the probative value of this evidence was outweighed by its prejudicial effect. As we noted above, the standard of review for this determination is abuse of discretion. There is nothing in the record which suggests that the trial court abused its discretion when making this determination.

The convictions of the defendant, Arnold W. Hilgeford, are AFFIRMED.