J-S68008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALOAF SUTTON, | |
| Appellant | No. 3520 EDA 2013 |

Appeal from the Judgment of Sentence November 22, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004873-2010

BEFORE: BENDER, P.J.E., DONOHUE, J., and MUNDY, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED DECEMBER 10, 2015**

Appellant, Aloaf Sutton, appeals *pro se* from the judgment of sentence of 12½ to 25 years' incarceration, which followed his negotiated guilty plea to rape and terroristic threats. Appellant's sole issue on appeal is whether the trial court had jurisdiction over his case. To this end, Appellant espouses several outlandish and discredited theories regarding the trial court's ostensible lack of jurisdiction. After careful review, we affirm.

The facts leading to Appellant's conviction are largely irrelevant to his appeal. Briefly, Appellant pled guilty to raping a seventeen-year-old girl, which he accomplished by telling the victim that he had a gun and that he would shoot her if she did not comply with his demands. Appellant rejected the Commonwealth's initial plea offer, and proceeded to a jury trial on June 4, 2012. After three witnesses (including the victim) testified against

Appellant, he elected to enter a negotiated guilty plea on June 5, 2012, in exchange for a recommended aggregate sentence of 12½ to 25 years' incarceration. Sentencing was deferred for an evaluation by the Sexual Offender Assessment Board. Prior to sentencing, and while still represented by counsel, Appellant filed numerous *pro se* motions seeking to withdraw his guilty plea. Each of these motions was denied by the trial court. Subsequently, on September 7, 2012, trial counsel was permitted to withdraw his appearance, and sentencing counsel was appointed on September 10, 2012. Despite the appointment of sentencing counsel, Appellant continued to file, and the trial court continued to deny, several *pro se* motions while Appellant was awaiting sentencing. Ultimately, when Appellant appeared before the trial court for sentencing on November 22, 2013, the court denied Appellant's final pre-sentence attempt to withdraw his plea, denied his motion to proceed *pro se*,[1] and sentenced him pursuant to the negotiated plea agreement to 10 – 20 years' incarceration for rape, and a consecutive term of 2½ - 5 years' incarceration for terroristic threats.[2] Appellant filed a timely appeal from this sentence.

_____

[1] The Commonwealth indicates that the trial court rejected Appellant's request to proceed *pro se* at this point because of Appellant's "disinterest or inability" to comply with the court's procedures. Commonwealth's Brief, at 4.

[2] The trial court characterized this sentence as "demandatorized" because Appellant's rape conviction constituted a 'third-strike' pursuant to 42 Pa.C.S. § 9714(a)(2) ("Where the person had at the time of the commission of the
*(Footnote Continued Next Page)*

- 2 -

The trial court awaited the production of the notes of testimony before ordering Appellant to file a Pa.R.A.P. 1925(b) statement on May 6, 2014.[3] Sentencing counsel subsequently sought to withdraw as Appellant's counsel on May 27, 2014, citing a breakdown in the attorney-client relationship. By order dated June 2, 2014, sentencing counsel was permitted to withdraw. Appellate counsel was appointed and filed a Rule 1925(b) statement on Appellant's behalf on July 2, 2014.[4]

On September 16, 2014, Appellant filed with this Court a "Motion of Waiver of Counsel and Unlawful Usage of *Pro Se*," in which Appellant sought, effectively, to proceed *pro se* (but preferred to use the terms, "*Sui Juris In Propria Persona*").[5] In response, this Court issued an order on October 27,

---
*(Footnote Continued)* ————————

current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement[.]").

[3] Nevertheless, while counseled, Appellant filed a *pro se* Rule 1925(b) statement which largely mirrors the claim(s) in his brief attacking the trial court's jurisdiction to try and sentence him.

[4] This counseled Rule 1925(b) statement raised a single issue: whether the trial court erred in denying Appellant's multiple requests to withdraw his plea. Appellant has abandoned this claim on appeal.

[5] '*Sui juris*' means, loosely, the capacity to manage one's own affairs, as opposed to '*alieni juris*,' which indicates the person is under the control of another, such as a legal guardian. '*In propria persona*' means in his or her own person. '*Pro se*,' of course, conveys essentially the same meaning as "*in propria persona*," and is the convention used by this and most other American courts. There is no recognized legal distinction between '*sui juris*
*(Footnote Continued Next Page)*

2014, remanding this matter to the trial court for a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998) (requiring the trial court, on behalf of the appellate court in which waiver of counsel is sought, to make an on-the-record determination that the waiver is a knowing, intelligent, and voluntary one). On April 14, 2015, the trial court issued an order confirming that Appellant had knowingly, voluntarily, and intelligently waived his right to counsel on appeal.

Appellant presents the following question(s)/issue(s) for our review, reproduced *verbatim* from Appellant's brief:

> Whether the true nature of this action is actually criminal or civil? And whether the Constitution allows Congress to create and/or enact an extra jurisdiction called statutory jurisdiction, in literal terms, meaning, a legislative jurisdiction that unlawfully falls outside of the realm of the three jurisdiction allowed by the Constitution in which the courts may operate under, which is Common Law, Admiralty/Maritime and Equity. However, through legislation and/or statutory jurisdiction, Congress has cleverly and secretly, extended the admiralty/maritime jurisdiction.
>
> The aforementioned "Special Maritime" and territorial jurisdiction of the "UNITED STATES" outside the original limits of its jurisdiction. Thus, making the actions against the Appellant civil in nature, with criminal penalties attached thereto, in which the Appellant is being punished by.

Appellant's Brief, at 5.

_____
*(Footnote Continued)* _____

*in propria persona*' and '*pro se*' in a criminal court. Either one is represented by an attorney, or not.

As is immediately apparent, Appellant's claim is barely comprehensible. However, we can ascertain that Appellant is attempting to challenge the jurisdiction of the trial court to convict and sentence him. Specifically, Appellant believes that the Criminal Division of the Court of Common Pleas of Philadelphia County is an unlawful extension of the federal judiciary's maritime jurisdiction under Article III of the Federal Constitution.[6]

Appellant's claim is frivolous on its face. The judicial power of the courts of Pennsylvania derives from the Constitution of the Commonwealth of Pennsylvania. **See** Pa.Const. art. V, § 1 ("The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system."). Therefore, the judicial power of a

---

[6] **See** U.S. Const. art. III, § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public Ministers and Consuls;--**to all Cases of admiralty and maritime Jurisdiction**;--to Controversies to which the United States shall be a Party;--to Controversies between two or more States;--between a State and Citizens of another State;--between Citizens of different States;--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.") (emphasis added).

subdivision of the Court of Common Pleas of Philadelphia County does not, nor does it purport to, derive its jurisdiction and/or authority over criminal cases from the Judicial Power established under Article III of the Constitution of the United States.

To scratch the surface of the absurdity of some of the arguments offered in support of Appellant's claim, we point to his assertion that the gold fringe on a flag displayed in the trial court substantiates his belief that he was being tried under "Military Maritime Law." Appellant's Brief, at 22. This claim is, of course, absurd on its face. It is the Constitution of the Commonwealth of Pennsylvania that confers jurisdiction upon a Pennsylvania court, and not the decorative fabric that surrounds a flag displayed therein.

This type of bizarre and illogical argument is, unfortunately, not unfamiliar to this Court. Appellant, like too many others, subscribes to the wholly discredited theories of the Sovereign Citizen Movement and related pseudo-legalistic belief structures.[7] It is tempting to laugh off Appellant's claims as much-needed comic relief in the solemn world of criminal law; but the truth is, these sorts of claims waste the precious time and limited resources of this and every other court in our Commonwealth. This wasted time and energy inevitably delays justice for criminal defendants with colorable claims, and for those victims who are eagerly awaiting the finality

---

[7]**See** https://en.wikipedia.org/wiki/Sovereign_citizen_movement.

of judgments, both of whom must suffer while this Court accommodates the frivolous rants of so-called sovereign citizens like Appellant.[8]

Judgment of sentence **affirmed**.

_____

[8] We are not the first Court to deem the arguments of the Sovereign Citizen Movement to be frivolous.  Sadly, we will also not be the last to do so.  We do agree with the sentiments of the 7th Circuit Court of Appeals, which, in addressing frivolous sovereign citizen claims in another matter, stated as follows:

> Our intention is not to quash the presentation of creative legal arguments or novel legal theories asserted in good faith.  But the arguments raised by these defendants were not in good faith. We have repeatedly rejected their theories of individual sovereignty, immunity from prosecution, and their ilk.  **See United States v. Burke**, 425 F.3d 400, 408 (7th Cir. 2005); **United States v. Hilgeford**, 7 F.3d 1340, 1342 (7th Cir. 1993) (rejecting the "shop worn" argument that a defendant is a sovereign and is beyond the jurisdiction bounds of the district court); **United States v. Sloan**, 939 F.2d 499, 500–01 (7th Cir. 1991); **United States v. Schneider**, 910 F.2d 1569, 1570 (7th Cir. 1990) (describing defendant's proposed "sovereign citizen" defense as having "no conceivable validity in American law"); **United States v. Phillips**, 326 Fed.Appx. 400 (7th Cir. 2009) (dismissing jurisdiction arguments as frivolous because federal courts have subject matter and personal jurisdiction over defendants brought before them on federal indictments alleging violations of federal law).  Regardless of an individual's claimed status of descent, be it as a "sovereign citizen," a "secured-party creditor," or a "flesh-and-blood human being," that person is not beyond the jurisdiction of the courts.  These theories should be rejected summarily, however they are presented.

**United States v. Benabe**, 654 F.3d 753, 767 (7th Cir. 2011).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/10/2015