**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Matthew GOOTEE, Defendant–Appellant.**

**No. 93–2088.**

United States Court of Appeals,
Seventh Circuit.

Submitted April 19, 1994.

Decided Sept. 2, 1994.

Andrew B. Baker, Jr., Asst. U.S. Atty., Dyer, IN, for plaintiff-appellee.

William L. Touchette, Merrillville, IN, for defendant-appellant.

Before COFFEY, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Matthew Gootee was convicted by a jury of three counts of knowingly distributing a quantity of Lysergic Acid Diethylamide (LSD) in violation of 21 U.S.C. § 841(a)(1). A primary government witness was confidential informant (CI) Gregory Bellamy, to whom Gootee sold LSD. Gootee appeals the district court's exclusion of certain testimony at trial that Gootee claims supported his defense of entrapment and served to impeach Bellamy. Gootee also appeals the district court's refusal to hold an evidentiary hearing on his motion for a new trial. We affirm.

## I. FACTS

Gregory Bellamy met Matthew Gootee at a forest preserve in the summer of 1991. The two discussed drugs and Gootee indicated that he could procure sheets of LSD for Bellamy. After several more contacts with Gootee, Bellamy approached the Hammond, Indiana, police to offer his services as an informant in exchange for assistance with a pending criminal action in Illinois. Thereafter Bellamy made recorded telephone calls to Gootee and the two ultimately reached an agreement on a sale. Bellamy testified that for the first sale, Bellamy met Gootee at Gootee's place of employment in Hammond, Indiana and Bellamy purchased one sheet of paper with 100 dosage units of LSD for $300. Bellamy then purchased two sheets of 200 dosage units for $550, again at Gootee's work place. The third sale took place at Gootee's home where Bellamy bought 15 dosage units for $67.

Gootee's version of the events differs in some respects. He claims that Bellamy first approached him at the forest preserve and that Bellamy first discussed LSD with a man who was at Gootee's home providing him with an estimate for tree removal. Gootee claims that thereafter Bellamy pestered him to obtain LSD from that individual. Gootee says he refused, but that Bellamy began threatening to expose Gootee's homosexuality to his family and co-workers. Around the same time, Gootee's home was vandalized several times and Gootee testified that he suspected Bellamy was involved. When discussing these events with Bellamy, Bellamy told Gootee to "do what I asked you to—do and you won't have problems." Trial Transcript at 805. Gootee admits delivering LSD to Bellamy on all three occasions, but raised the defense of entrapment.

Bellamy was cross-examined by Gootee's counsel about his contacts with Gootee. Bellamy denied soliciting sex with Gootee for money or exposing himself to Gootee at Gootee's home. Bellamy denied using illegal drugs with a man named James Haddon. He denied having sex with Haddon for mon-

ey, but admitted he was arrested for public indecency. Finally Bellamy denied offering LSD to Kim Zuffa at Gootee's house.

Gootee sought to introduce extrinsic evidence to contradict Bellamy's testimony, arguing that such evidence supported Gootee's defense of entrapment and impeached Bellamy's credibility. Specifically, Gootee wanted to testify as to Bellamy's alleged sexual propositions. Gootee tried to offer Haddon's testimony, stating that Bellamy had used drugs with him and had sex with him for money. Gootee also offered Kim Zuffa's testimony that Bellamy had offered her drugs. The district court allowed Gootee to make offers of proof, but ruled that the extrinsic evidence was irrelevant to the defense of entrapment.[1]

## II. EXCLUSION OF TESTIMONY

Gootee first challenges the district court's exclusion of portions of his testimony, and the testimony of Haddon and Zuffa. Gootee argues that the excluded testimony supports his entrapment defense. The defense of entrapment requires proof of government inducement of the crime and the defendant's lack of predisposition to engage in criminal conduct. *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *see Jacobson v. United States*, —— U.S. ——, ——, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992). We note that the district court allowed Gootee to cross-examine Bellamy on these topics, but was not allowed to introduce extrinsic evidence to contradict Bellamy's testimony. We review the evidentiary rulings of the trial court with deference, reversing only for an abuse of discretion. *United States v. Hilgeford*, 7 F.3d 1340, 1345 (7th Cir.1993); *United States v. Smith*, 995 F.2d 662, 671 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 718, 126 L.Ed.2d 683 (1994).

We agree with the district court that the testimony of Haddon and Zuffa was not relevant to Gootee's defense of entrapment. Gootee claimed that Bellamy's threats to reveal Gootee's homosexuality and the acts of

1. According to Gootee, "Bellamy was preying on Gootee because Gootee was a homosexual, who could be exploited and intimidated regarding Gootee's homosexuality." Appellant's Brief at 26 (citing Trial Transcript at 515–19).

vandalism at his home forced him to supply Bellamy with LSD. Evidence that Bellamy used drugs or offered drugs to a third party is not relevant to prove that Gootee was induced to sell LSD to Bellamy by the alleged threats or acts.

Gootee wanted to testify that Bellamy solicited sex for money from him when they first met. Further, he offered Haddon's testimony that Haddon had been arrested with Bellamy for deviate sexual conduct. Finally, Gootee proffered testimony that Bellamy had sex with a man just prior to meeting Gootee at the forest preserve. This testimony is not relevant to his defense. Gootee failed to show the connection between Bellamy's alleged sexual proposition, which according to Gootee's testimony happened only once, Trial Transcript at 769–70, and being induced to sell LSD. Any solicitation by Bellamy to a third person, an event that Gootee apparently did not even know about at the time, does not support his entrapment defense.[2] *See United States v. Beverly*, 913 F.2d 337, 353 (7th Cir.1990) (upholding trial court's finding that witness testimony was not relevant to defendant's activities connected with charges), *cert. denied*, 498 U.S. 1052, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991).

■ Gootee then argues that the excluded testimony served to impeach Bellamy and therefore should have been allowed. We disagree. Federal Rule of Evidence 608 provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than a conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) con-

cerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

F.R.E. 608(b). Gootee cross-examined Bellamy regarding the information to which Haddon and Zuffa would testify, his alleged solicitation of Gootee and his sexual contact with another man. *See United States v. F.J. Vollmer & Co.*, 1 F.3d 1511, 1522 (7th Cir. 1993) (defendant questioned witnesses, putting the information before the jury, and argued these points in closing; extrinsic evidence not permissible), *cert. denied,* —— U.S. ——, 114 S.Ct. 688, 126 L.Ed.2d 655 (1994). Bellamy denied each accusation. Under Rule 608, extrinsic evidence was precluded to contradict Bellamy's testimony.[3] *See United States v. Lewis*, 954 F.2d 1386, 1395 (7th Cir.1992); *cf. United States v. Holt*, 817 F.2d 1264, 1271 n. 3 (7th Cir.1987) ("if the evidence were offered only for impeachment purposes, the government would not have been allowed to offer rebuttal testimony after [the defendant] had denied that he stole the checks").

### III. MOTION FOR NEW TRIAL

Gootee next argues that the district court erred in failing to conduct an evidentiary hearing on his motion for a new trial based on newly discovered evidence brought pursuant to Federal Rule of Criminal Procedure 33. On the last day of jury deliberations, Gootee and Richard Rueth observed the jury foreman pass through a security station at the federal building. The juror had a book entitled "You and the Law" or "The Law and You." A court security officer confiscated

---

**2.** Gootee also contends that the court improperly barred him from testifying that the subject of LSD was first mentioned by Bellamy in his discussion with a tree cutter named John. One factor relevant to determining a defendant's predisposition is "whether the suggestion of the criminal activity was originally made by the government." *United States v. Fusko*, 869 F.2d 1048, 1052 (7th Cir.1989); *see United States v. Haddad*, 976 F.2d 1088, 1094–95 (7th Cir.1992). The trial transcript reveals that Gootee indeed

testified to this and therefore he cannot claim the district court erred in refusing to permit such testimony. Trial Transcript at 778–79.

**3.** The district court further found that any testimony regarding Bellamy's sexual acts with others was not admissible under Rule 403 because its probative value was outweighed by undue prejudice. Because we find that this testimony was irrelevant, we need not address this point.

the book from the juror.[4] Gootee first brought this information of possible juror misconduct to the court's attention after the jury was dismissed and even after he was sentenced four months later.[5] Because Gootee did not object during the proceedings, the district court held that he had waived this claim.

We conclude that Gootee's claim is waived, and even if it were not, the evidence was not newly discovered, so the district court was not required to conduct an evidentiary hearing. We will reverse a district court's denial of a motion for a new trial based on newly discovered evidence only if the district court has abused its discretion. *United States v. DePriest,* 6 F.3d 1201, 1216 (7th Cir.1993); *United States v. Kamel,* 965 F.2d 484, 490 (7th Cir.1992). We agree that by failing to bring the information surrounding the possible juror misconduct to the court when he learned of it Gootee waived his claim. *See United States v. Bolinger,* 837 F.2d 436, 438–39 (11th Cir.) (defendant waived juror bias claim by failing to bring misconduct to the court's attention before the jury rendered its verdict), *cert. denied sub nom. De La Fuente v. United States,* 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988); *United States v. Dean,* 667 F.2d 729, 730, 734 (8th Cir.1982) (holding that the defendant, by not bringing his knowledge of possible juror bias to the attention of the district court prior to verdict, waived his right to a new trial); *United States v. Jones,* 597 F.2d 485, 588 n. 3 (5th Cir.1979) ("a defendant cannot learn of juror misconduct during the trial, gamble on a favorable verdict by remaining silent, and then complain in a post-verdict motion that the verdict was prejudicially influenced by that misconduct"), *cert. denied,* 444 U.S. 1043, 100 S.Ct. 729, 62 L.Ed.2d 728 (1980); *see also* 96 A.L.R. 530 (1935) ("The general rule is that misconduct on the part of anyone in connection with the jury after their retirement, although it be of

a character which might vitiate the verdict if brought to the attention of the court by timely complaint, is not available after the return of the verdict, as a ground for a new trial or reversal, where it was known to the defendant or his counsel before the return of the verdict.").

Even if the claim was not waived, Gootee cannot prevail. To justify a new trial based on newly discovered evidence, Gootee must satisfy a stringent multi-stage test. *United States v. Young,* 20 F.3d 758, 763 (7th Cir.1994); *DePriest,* 6 F.3d at 1216. He must show that the evidence: (1) came to his knowledge only after trial; (2) could not have been discovered sooner through the exercise of due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a new trial. *Id.; see United States v. Goodwin,* 770 F.2d 631, 639 (7th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986).

Gootee cannot satisfy even the first prong of the test. Gootee himself observed the juror enter the building with the book and saw that it was taken away from him. As we noted, he possessed this knowledge before the jury returned a verdict. In order to avoid this conclusion, he claims that he did not understand the legal significance of what he observed. Our case law indicates that knowledge of the facts, not legal conclusions, is important to this inquiry.[6] *See, e.g., United States v. Ellison,* 557 F.2d 128, 133 (7th Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977) ("the facts alleged in support of a motion for a new trial were within the defendant's knowledge at the time of trial" and thus not newly discovered); *Roach v. Stastny,* 104 F.2d 559, 562 (7th Cir.1939) (new trial based on newly discovered evidence not warranted because defendant knew facts at time of trial even though his attorney did not know them and defendant

---

4. There is no evidence that the book was brought into jury deliberations.

5. Gootee apparently did not provide his attorney with this information until after the jury returned its verdict and was discharged.

6. Additionally, we note that the court admonished a juror soon after the jury was selected that "[t]he Court does not permit books or anything in writing" brought into the courtroom. Trial Transcript at 148. Gootee was present in court and therefore at least had some notice as to the strict rules that jurors must follow.

was not aware of their significance). Therefore, his ignorance of the importance of such information does not excuse the delay in informing the court of possible juror misconduct.[7] Because Gootee's claim of newly discovered evidence is without merit, the district court did not err in failing to hold an evidentiary hearing.

## IV. CONCLUSION

We conclude that the district court did not abuse its discretion in excluding the proffered testimony or in denying Gootee's motion for an evidentiary hearing on his claim of juror misconduct. Therefore, we AFFIRM the district court's judgment.

---

7. Generally, a motion for a new trial brought pursuant to Rule 33 is frequently ruled upon without an evidentiary hearing. *See* J. Moore, 8A Moore's Federal Practice para. 33.03(3) at 33–24 (2d ed. 1990).