UNITED STATES of America, Plaintiff,

v.

**Jeff BOYD, et al., Defendants.**

**No. 89 CR 908.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 4, 1997.

---

Henry Andrews, Chicago, IL, pro se.

Peter J. Schmiedel, Cook County Public Guardian, Chicago, IL, Gary Jay Ravitz, Chicago, IL, for Henry Andrews.

Thomas L. Bates, Terre Haute, IN, pro se.

Robert G. Clarke, Chicago, IL, for Thomas L. Bates.

Jeff Boyd, Chicago, IL, pro se.

Kenneth Hamilton Hanson, Law Office of Kenneth H. Hanson, Jed H. Stone, Law Offices of Jed Stone, Ltd., Chicago, IL, for Jeff Boyd.

Peter J. Schmiedel, Cook County Public Guardian, Chicago, IL, for George Carter.

Thomas Keith McQueen, Jenner & Block, Chicago, IL, James S. Montana, Jr., Office of the Governor, Chicago, IL, for Jackie Clay.

Victor M. Pilolla, Chicago, IL, for Edgar Cooksey.

Eugene Charles O'Malley, Chicago, IL, for Andrew Craig.

Jerome A. Crowder, Springfield, MO, pro se.

Carl Peter Clavelli, Chicago, IL, Martin Steven Agran, Agran & Agran, Ltd., Chicago, IL, for Jerome A. Crowder.

Standish E. Willis, Chicago, IL, for Lawrence Crowder.

Frank Davion Edwards, The Bourgeois Law Firm, P.C., Chicago, IL, for Floyd Davis.

Richard H. McLeese, Thomas D. Decker & Associates, Ltd., Chicago, IL, Marianne Jackson, Chicago, IL, Gary Jay Ravitz, Chicago, IL, for William Doyle.

Loraine Anne Ray, Loraine A. Ray, Chicago, IL, for Harry Evans.

Luis M. Galvan, Federal Defender Program, Chicago, IL, William A. Barnett, Chicago, IL, for Eddie Franklin.

Eddie Franklin, Terre Haute, IN, pro se.

Richard Carl Leng, Leng, Stowell, Friedman & Vernon, Chicago, IL, Kent R. Carlson, Chicago, IL, for Bernard Green.

Charles Green, Chicago, IL, pro se.

Joshua Sachs, Douglas P. Roller, Roller & Associates, Chicago, IL, for Charles Green.

Richard F. Walsh, Chicago, IL, for Henry Leon Harris.

Donna Ann Hickstein–Foley, Foley and Foley, Chicago, IL, for Earl Hawkins.

Donald Paull, Whitted & Kraning, Chicago, IL, for Louis Hoover.

J. L. Houston, Pontiac, IL, pro se.

Stanley L. Hill, Stanley L. Hill & Associates, P.C., Chicago, IL, Darlene Anne Blaszczak, George C. Pontikes & Associates, Chicago, IL, for J. L. Houston.

Eugene Hunter, Chicago, IL, pro se.

Mary Stowell, Leng, Stowell, Friedman & Vernon, Chicago, IL, for Eugene Hunter.

Michael B. Mann, Oak Brook, IL, Scott Jay Frankel, Frankel & Cohen, Chicago, IL, Ellen R. Domph, Chicago, IL, for Derrick Kees.

Robert Joseph Raab, Barnett & Raab, Skokie, IL, Jack P. Rimland, Chicago, IL, for Isiah Kitchen.

Isiah Kitchen, Oxford, WI, pro se.

Alan Knox, El Reno, OK, pro se.

Marc Richard Kadish, Clinical Prof. Chicago–Kent College of Law, Illinois Institute of Technology, Chicago, IL, John M. Beal, Chicago, IL, for Alan Knox.

William A. Barnett, Michael James Falconer, Chicago, IL, for Sammy Knox.

Keith Allan Spielfogel, Chicago, IL, for Roland Lewis.

Edwin Earl Brooks, Katten, Muchin & Zavis, Chicago, IL, Ronald J. Clark, Chicago, IL, for Felix Mayes.

Richard H. McLeese, Thomas D. Decker & Associates, Ltd., Chicago, IL, for Melvin Mayes.

Martin Steven Agran, Agran & Agran, Ltd., Chicago, IL, for Derrick Porter.

Allan A. Ackerman, Allan A. Ackerman, P.C., Chicago, IL, Anita Rivkin–Carothers, Anita Rivkin–Carothers and Associates, Chicago, IL, Donald V. Young, Donald V. Young & Associates, Chicago, IL, Leonard Crown Goodman, Chicago, IL, T. Lee Boyd, Jr., T. Lee Boyd, Jr. & Associates, Chicago, IL, Robert P. Aulston, Chicago, IL, Brian M. Collins, Collins & Bastounes, Chicago, IL, John M. Beal, Chicago, IL, for Noah R. Robinson.

Noah R. Robinson, Chicago, IL, pro se.

James Andrew Graham, Law Offices of James A. Graham, Chicago, IL, for Michael Sardin.

Rhoda Davis Sweeney, Rhoda Davis Sweeney, P.C., Chicago, IL, for James Speights.

Richard S. Jalovec, Richard S. Jalovec & Associates, Chicago, IL, Stephen E. Eberhardt, Chicago, IL, for Freddie Elwood Sweeney.

William Kenneth Hedrick, Skokie, IL, Paul Edward Paprocki, Chicago, IL, David G. Duggan, Chicago, IL, Stephen E. Eberhardt, Chicago, IL, June B. Fournier, Lake Zurich, IL, for Melvin Tillman.

Jerry B. Kurz, Hall & Kurz, Chicago, IL, Kevin Thomas Lee, Wilson, Lee & Davis, Chicago, IL, for Edward Williams.

John A. Meyer, Chicago, IL, for Ricky Dean Williams.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

I have before me several post-trial motions, some filed past the time I allowed for them, some filed in disregard of any time limits.

■ The Government says all the motions are too late. According to *United States v. Hocking,* 841 F.2d 735 (7th Cir.1988) and the plain language of the applicable Rules these motions "shall be made within 7 days after verdict or within such further time as the court may fix during the 7–day period." If the 7 days pass, the district court may not grant any extension of time. *See Carlisle v. United States,* —— U.S. ——, ——, 116 S.Ct. 1460, 1464, 134 L.Ed.2d 613 (1996). Here

the verdict was rendered on September 26, 1996, and on that day defendants asked for additional time. I then clearly had jurisdiction to grant the request, and I offered to give counsel "whatever you want." They asked for 24 days, and I gave it to them. I would have given them more if they had asked, but they did not do so then or at any moment prior the expiration of the 7–day period. The defendants did make motions for further extensions and I granted them. The Government agrees that it did not object, but it says that the absence of objection means nothing because I had no power to give an extension. Under *Hocking* the Government wins the point and defendants do not dispute this. Instead they say I should read another case, *Eady v. Foerder*, 381 F.2d 980 (7th Cir.1967) which creates a "unique circumstances" exception to the strictures of the Rules. There is some reason to believe that *Eady*, as precedent, is hanging on by the skin of its teeth (particularly after *Carlisle* ) but it is binding upon me.

The principal case on this exception is *Varhol v. National R.R. Passenger Corp.*, 909 F.2d 1557 (7th Cir.1990) (en banc). In *Varhol*, a motion for new trial was filed beyond the 10–day period provided in the rules, a non-extendable period. The judge, apparently acting sua sponte, told counsel he had 21 days to file post-trial motions; the motion was filed within the extended period and denied 59 days after judgment was filed on the verdict. Then a notice of appeal was filed, obviously well beyond the prescribed period of appeal. The Court of Appeals would have no jurisdiction to hear the appeal unless the properly filed motion for new trial operated to stay the running of the appeal period. It was critical therefore to decide whether the new trial motion was properly filed even though it was tendered to the court well past the ten-day limit. An en banc Court agreed that the judgment below should be affirmed. The per curiam opinion for the Court said that appealability was preserved by virtue of the trial judge's finding that there was excusable neglect for the failure to file a prompt notice of appeal. This finding was entitled to deference, and deference having been given. the per curiam went on to hold that the merits of the appel-

lant's appeal were insufficient. There was a six-to-six split on the question of the viability of the rule in *Eady*. Half the judges thought *Eady* was erroneously decided and inconsistent with the plain language of the Rules and the holdings of other Circuits. *See Varhol v. National R.R. Passenger Corp.*, 909 F.2d 1557, 1572–77 (Concurring opinion of Judge Manion, joined by Judges Cummings, Posner, Coffey, Easterbrook and Eschbach). The other half reaffirmed *Eady*, which stood as Circuit precedent by virtue of an equally divided en banc Court. *Id.* at 1568–72. (Concurring opinion of Judge Flaum, joined by Judges Bauer, Wood Jr., Cudahy, Ripple and Kanne).

In *Varhol*, Judge Flaum said that *Eady* excuses "a mutual mistake by the district court and the parties about the power of the court to extend the time for a Rule 59 motion." *Id.* at 1571. This language does not quite fit the circumstances of this case. When the original extension of time was granted, neither court nor counsel were mistaken about the power of the court. The power existed and was exercised appropriately. The second motion for extension was granted without discussion and without a prompting from the court. By contrast, in *Varhol* the district judge had volunteered to the lawyers that they could take 21 days to file their motions. It is useful then to look at further precedent. In a pre–*Varhol* case, Judge Flaum held that the simple entry of a minute order granting a request for extension of time "is not an act of affirmative representation by a judicial officer ..." *Green v. Bisby*, 869 F.2d 1070 (7th Cir.1989). Judge Kanne said the same thing in *Hope v. United States*, 43 F.3d 1140 (7th Cir.1994).

█ The defendants, therefore, have to show that they relied upon erroneous information from me to them about the amount of time they would have. It is not enough that they be mislead, they have to be mislead by the court. I do not see how they can demonstrate this since I told them, within the appropriate time period, that they could have as much time as they wanted then and there. I did not say they could come in for further extensions after the seven-day period expired. It is true that I thought they could,

but I did not say so and so did not mislead counsel who could read the Rules as well as anyone. I had not given specific assurance that motions for extension could be filed beyond the appropriate time period. I do not find that there was excusable neglect. As I read the "unique circumstances" rule, the defendants must show not merely that it was possible for them to infer that it might be all right to file for more extensions, rather they must show that they were assured that this would be so. What happened here was, of course, not exactly what happened in *Green* or in *Hope.* There was more than a minute order but not enough to take this case out of the ambit of those two decisions which I read to say that the mere routine granting of a motion for more time is not enough to justify application of the exceptional circumstances doctrine.

The defendant Robinson would not, in any event, be entitled to application of this doctrine for his principal post-trial motions which were filed in December, well after the erroneously granted extension had itself expired. Nor would the defendant Boyd be entitled to claim "unique circumstances" for his two recently tendered "Supplements" to his original supplemental motion for new trial.

There is provision for motions to be filed past deadlines if they cite newly discovered evidence which is evidence that could not have been discovered earlier with due diligence. The defendants say that this is time of their motions. Newly discovered evidence needs to be quite strong; mere impeachment or cumulative evidence won't do nor will evidence that would not probably result in acquittal. *United States v. Gonzalez,* 93 F.3d 311 (7th Cir.1996). I see no new evidence, just more impeachment of the sort that was used extensively in the trial and virtually none of which was unavailable prior to trial if defendants exercised due diligence. The expert report on the tape recordings made on March 26, 1986 would have been available with due diligence as well.

The motions are untimely and I deny them for that reason. Alternatively I would deny them on the merits if they were timely.

## THE POTENTIAL MERITS OF THE MOTIONS

### NOAH ROBINSON

Noah Robinson has filed several documents without any leave of court, and I strike some of them since they are merely attempts to file two briefs on the same point. In one case it seems to me there is yet a third brief purporting to be a summary of where his case stands in which he recites anew his various theories. In addition to constituting multiple filings, some of them were filed, without leave, on the eve of or after the government's answer thus depriving the government of a chance to speak to his claims. I would look to his improperly oversized consolidated motions for new trial and his motions for judgment of acquittal and arrest of judgment, the government's response and Robinson's reply to the response were I to consider post-trial motions on the merits. In a separate minute order I strike several of Robinson's papers.

■ There is no point to detailing here the argument that the evidence was insufficient or his rehearsal of claims made at trial and rejected there. The claim of improper seizure of evidence from his home was not raised in time. The *Brady* claims are unpersuasive. They center around positive drug tests of two government witnesses. I thought I heard similar evidence at trial and it was available to Robinson and his counsel by issuing subpoenas. Indeed that is how Robinson secured the evidence that he presents on his motion. Robinson's allegations about Cooksey's cooperation with the government prior to June 19, 1996 are without any basis beyond that of a wing and a prayer, if one takes away the wing.

■ Robinson's claim that he was not properly admonished about the dangers of self-representation is made tongue in cheek. When he appeared before me early in the retrial proceeding, I had the advantage of transcripts and case reports from the prior trial in this case and opinions in other cases where Robinson had been convicted. His education, his speaking ability, his writing ability and his familiarity with legal precedent and his

courtroom presence and demeanor were patent to me. He had represented himself in prior post-trial proceedings. Indeed he knew of and had read the precedents that suggest particular admonitions be given to defendants who represent themselves. He so informed me of that fact and pointed out that he had knowingly refrained from criticizing the court for not following his reading of this precedent. This colloquy occurred shortly before or after trial began. Robinson consistently asserted his ability to defend himself, and I agreed then and I think now that he has that ability to defend himself as well as any lawyer might in the context of this case and the evidence against him. I also find now and found then that in fact he knew what the drawbacks were in representing himself. His motions are replete with references that show his knowledge of the rule of *Faretta v. California* and he also commented, many times, on the disadvantages of self-representation. Indeed when he complained, as he did from time to time, about the difficulties of self-representation, the government responded with a litany of what it was that Robinson surrendered by representing himself None of them were a surprise to Robinson. He also knew the advantages of self-representation; his opening statement constituted unsworn and un-cross-examined testimony on his own behalf. His decision to represent himself was deliberate and knowing and his claims here that it was not are insincere and manipulative.

Robinson waived his presence during jury deliberation and failed to object at trial to his absence when, after consultation with his and other counsel, I responded to questions by the jury. These questions raised matters requiring legal judgments rather than factual judgments. Indeed Robinson asked, with some vehemence, not to be held in this court building and to be returned to the MCC during deliberation. This is one example of Robinson's requesting something and then complaining when his wish is granted. Another example of this was his early assertion (untrue in fact) that he was ready for trial coupled with his later assertion (also untrue in fact) on the eve of trial that he was unready for trial. In any event, the jury

question matters were trivial in the context of this trial and there was no harm.

The point made about the tape unsealing order is factually wrong and legally inconsequential.

This court, and not a court in South Carolina, has jurisdiction over indictments returned by the Grand Jury in the Northern District of Illinois. Robinson's claim that the District of South Carolina had jurisdiction over this case is wrong. Whatever argument he might have had over the issue of where he was being held in custody or toward what sentence his time ought to be credited are of no moment here and were not pursued in any court here or in South Carolina. Those claims would be effectively waived.

### JEFF BOYD

■ The defendant Boyd's initial supplemental motion for new trial is grounded on the theory that the government knowingly offered evidence that it knew to be false. Boyd says this is proved by inconsistencies between the sworn testimony in this trial and the same witnesses' sworn testimony in prior trials or inconsistencies between the testimony and certain incontestable facts. In some instances cited there is no clear inconsistency, i.e. neither of Clay's statements about the Freedom Brothers are clearly intended as complete lists of membership and the difference in inclusion or omission of names on two separate occasions is not necessarily inconsistent. More importantly, inconsistency standing alone is not proof of perjury in this trial. In the case of inconsistent statements, the *most* that can be said is that perjury was committed at one time. In other words, it is no more likely that perjury was committed at this trial than it was at a prior trial.

The defendant Boyd has the burden of proving a denial of due process and the equally balanced evidence does not do the trick. More importantly the examples of alleged perjury are just as likely to be mistakes and not lies. These witness's testified to events several years in the past and mistakes about when a particular event occurred are ordinary errors that most witnesses make. For example, it is difficult to see why the Government would knowingly allow or encourage a witness to say that Boyd was

selling drugs at a time when Boyd was demonstrably in prison. It certainly does not help the government to do this. Perhaps Boyd thinks the Government should have instructed the witness not to say that drugs were sold by Boyd in 1978. If the prosecutors did that they would be justly accused of putting words (or, more accurately, taking words) out of the witness' mouth and depriving the defense of the ability definitively to impeach the witness. The government is obligated not to offer perjured testimony, it has no cognate obligation to refuse to offer testimony that may be mistaken. Significantly the question and answer in this case shows that the answer was the witness' answer, the Government did not lead the witness or suggest the answer. To my recollection the Government did not dispute the time of Boyd's incarceration and did not argue that Boyd sold drugs in 1978. The witness' mistake was corrected.

The basis for those claims of perjury were all known or could have been known to the defendant Boyd at trial and used for impeachment. As I recall most of them were. The one example of previously unavailable evidence of a violation of the duty to disclose favorable evidence covers a matter so clearly collateral that its truth or falsity would have no bearing on the verdict in this case although it could be the basis of an argument that the witness Hawkins was given the benefit of non-prosecution for murder. The benefit theory would be difficult to prove since the decision to prosecute for murder in this context is not made by the United States Attorney. In any event the evidence of claimed violation turns out to be a dud. What Boyd relies upon is a deposition in which Hawkins said he told AUSA Cook about the murder of one Hester but in the same deposition Hawkins stated that he was, in effect, not sure that he had told this particular thing to Cook.

■ Boyd (and Robinson as well) operate on the assumption that when a witness says something at first, any later variance from that first statement is perjury. This is overreaching and unpersuasive, a bad rule of law and of life. And one that has no support in the decided cases. *United States v. Payne,*

102 F.3d 289 (7th Cir.1996), *United States v. Adcox,* 19 F.3d 290 (7th Cir.1994).

ALL DEFENDANTS

Defendants want to challenge the tape recordings introduced against them at trial. Some of these objections were made at trial and ruled upon and defendants could cite them in a timely filed new trial motion and I would adhere to my trial rulings. What is different now is the report of an expert who examined the tapes and asserts that the original tape and the duplicate original are not identical. There is a blank space on one that does not exist on the other at anywhere near the same length. Mays himself says that he listened to some tapes and found that five other original tapes were completely blank.

There is no contention that the voices on the tapes are not those of the persons identified as speakers during trial, nor is there any contention that the conversations played to the jury have been altered in any way. The claim is made simple on the basis that the tapes were not adequately shown to be authentic, even in the absence of any affirmative claim of inauthenticity.

■ The expert's report on the electronic recordings is not newly discovered. It was not completed in time for trial. If it came into being late in the day it is because the defendants did not ask for it earlier. I cannot recall denying a request for assistance to the defense, and I approved the retention of the expert on the day, late in the trial, that it was requested. The tapes were in this case from its very earliest stages, and the case was filed before the beginning of this decade. And the significance of the tapes was apparent to all defendants (except Mays) from a time antedating the first trial in this case years ago. Even Mays knew of the importance of the tapes for months before trial. The expert could have been asked to start his work, months before he was requested to do so, and his report could have been submitted in time for it to be heard at trial. *See United States v. Streich,* 759 F.2d 579 (7th Cir.1985); *United States v. Hedgeman,* 564 F.2d 763 (7th Cir.1977); *United States v. Vega,* 860 F.2d 779 (7th Cir.1988). The substance of the report and the opinion of the

expert was not secured with due diligence. *See United States v. Gootee*, 34 F.3d 475 (7th Cir.1994). Even a timely post-trial motion on this point would lose.

The report does not prove that any witness lied or tampered with the evidence; it proves nothing beyond a misidentification of one tape or the absence of synchronization or a copying failure, and even then it does not show where the copying failure, if such it was, occurred. It is suggestive of a basis on which defense counsel might have questioned certain government witnesses' accounts of the origin of the tape had they asked earlier for the tapes to be examined by an expert. The report is not even tied to a specific tape which was offered into evidence, although this is not surprising since defendants have carefully eschewed any attack on the actual reliability of the tape.

There is yet another reason to reject this challenge to the tapes, even if the motion for new trial had been timely filed. Within the context of this trial, the whole challenge comes too late. These tapes have been presented and admitted twice. The first trial was years ago and this challenge was never made. It was first made well after trial had begun here. It is true that it may often not be difficult to reconstruct the circumstances of the taping and to examine the tapes after many years, tapes are relatively durable objects. The damage is the delay and disruption of trial and unfair surprise. These considerations do not apply with quite the same force to defendant Mays who was not part of the first trial and, in the exercise of discretion, I will hold a hearing in his case on the question of the significance and reliability of the newly filed technical analysis of the March 28, 1986 taping.

The probation department is ordered to bring the pre-sentence reports of all defendants (except Mays) to current status by inquiring into the conduct of defendants subsequent to the date of the preparation along with any other new material submitted by prosecution and defense. The disposition date for defendants Boyd, Green, Knox and Robinson is June 19, 1997 at 2:00 p.m.

The hearing on the question of the tapes held on the motion of defendant Mays will be held on April 14, 1997 at 11:00 a.m. If the defendant Charles Green consents, Mr. Douglas Roller may assist Mays' counsel in this hearing if Mays so requests.

For the reasons given, the post-trial motions of defendants Boyd, Green, Knox and Robinson are denied. The motion of defendant Mays is set for hearing on the question of the March 28, 1986 taping.