In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3511

QIU PING LI,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A 97 391 066

ARGUED JUNE 9, 2009—DECIDED JULY 15, 2010

Before POSNER, WOOD, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. The petitioner seeks judicial review of the denial by the Board of Immigration Appeals of her motion to reconsider the Board's order denying her application for asylum. She hadn't sought review of that order, and the time for seeking review of it is long past, yet her brief argues only the invalidity of that order; it does not touch on the merits of the order actually under review, the order denying reconsideration. But neither

does the Board in its brief argue that the petitioner has waived or forfeited her challenge to the denial of reconsideration; it argues merely that the challenge lacks merit. The Board thus waived waiver. At oral argument we asked the lawyers to address the soundness of the denial of the motion for reconsideration, and they did so. The issue thus is both properly before us and ripe for decision. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008); *Badwan v. Gonzales*, 494 F.3d 566, 571 (6th Cir. 2007); *Zhong v. Gonzales*, 461 F.3d 101, 121 (2d Cir. 2006).

The petitioner is from Fujian province, where China's "one-child" policy is vigorously enforced. Her mother had been fined for violating the policy and later subjected to forced sterilization. The petitioner opposed the policy too, and so when notified in 2002, when she turned 18, to report for her first required periodic pregnancy test (a measure employed by the family-planning authorities to enforce the one-child policy), she ignored the notice. Five family-planning officers came to her house to find out why she hadn't shown up for the test. She told them the reason was her opposition to the one-child policy. The officers responded by forcibly removing her to the family-planning office, and when she refused to provide a urine sample there the staff yanked down her pants and forced or tried to force urine from her. What exactly they did and whether they succeeded in obtaining urine is unclear.

The following year, while the petitioner was staying with a cousin who was pregnant with a second child, the

cousin received a notice to appear at the family-planning office for an examination. She ignored the notice because she was afraid she'd be forced to have an abortion. So when family-planning officers came to her house to bring her in for the examination, the petitioner tried to block them from entering, while her cousin hid in the bathroom. By the time the officers had forced an entrance the cousin had fled through the bathroom window. So the officers took the petitioner into custody instead, and kept her in jail for three days. During her stay in jail she was given no bed to sleep on and the only food she was given was one serving a day of porridge. The porridge made her sick to her stomach and she was later diagnosed as suffering from gastritis, which the immigration judge found had been caused by the porridge.

The petitioner's mother paid 5,000 yuan—about a third of the petitioner's annual salary—to get her released from jail. The government's brief describes this as "bail," and we'll accept the characterization. Her family decided she'd better leave the country, so she fled to the United States, possibly on a forged passport, though this is unclear, and asked for asylum. Her cousin remains in hiding in China, and family-planning officers visit the petitioner's parents from time to time to inquire about the petitioner's whereabouts.

The immigration judge denied the petition for asylum in part because of doubts about the petitioner's credibility. But in dismissing her appeal the Board "decline[d] to address credibility," ruling that even if her testimony

(summarized above) was true, she had not proved that she'd been persecuted, or had a well-founded fear of being persecuted if she is returned to China. The Board said she had "never provided a urine sample and, thus, never officially complied with the family planning's request to submit to a pregnancy test. Significantly, [she] was never threatened, detained, physically harmed, or threatened with such harm as a result of her failure to comply as directed." Moreover, she had "failed to demonstrate that, because she failed to provide a urine sample or aided her cousin in avoiding detection by family planning officials, she was targeted for harm because she acted in a manner that would constitute 'resistance' or opposition to a coercive family control program. Thus, [she] did not suffer past persecution in China on account of a protected ground." And it was unlikely that she would be persecuted if she returned to China, because her conflicts with the family planners were "fairly remote, 2002 and 2003, and it does not appear that [she] injured or provoked any officers." The Board did not mention that she was a bail jumper.

In moving for reconsideration, the petitioner pointed out that the Board had overlooked "her other resistance to coercive population control program when she assisted her cousin to escape and for which she was detained for three days" and had "failed to discuss whether three day detention and mistreatment combined with considerable fine rise to the level of persecution." In denying the motion the Board said that it had "considered and addressed these claims. We find no merit in the assertion that we overlooked these facts.

The [petitioner] has not demonstrated mistreatment amounting to persecution." Nor had she "offered sufficient evidence regarding the fine to establish persecution," because "the record contains scant information concerning [her] financial situation." In short, "she has not demonstrated an error in fact or law in our prior decision to warrant reconsideration." The Board did not address the likelihood that the petitioner would be persecuted if she returned to China.

The denial of a motion to reconsider an order denying asylum is judicially reviewable, *Raghunathan v. Holder*, 604 F.3d 371, 376 (7th Cir. 2010); *Averianova v. Holder*, 592 F.3d 931, 935 (8th Cir. 2010); see *Kucana v. Holder*, 130 S. Ct. 827 (2010), and is reversible for an abuse of discretion. *Raghunathan v. Holder, supra*, 604 F.3d at 376; *Liu v. Mukasey*, 553 F.3d 37, 40 (1st Cir. 2009); *Aliyev v. Mukasey*, 549 F.3d 111, 115-16 (2d Cir. 2008). Such an abuse is shown when, the petitioner having identified a serious error in the Board's decision denying asylum, the Board denies reconsideration without appearing to have noticed the error. *Id.* at 118-19; *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008); *Gomes v. Gonzales*, 473 F.3d 746, 756-57 (7th Cir. 2007); *Narine v. Holder*, 559 F.3d 246, 249 (4th Cir. 2009); *Yeghiazaryan v. Gonzales*, 439 F.3d 994, 1000 (9th Cir. 2006).

The order denying asylum had stated that the petitioner had never given a urine sample. But if her testimony is believed—and remember that the Board has not questioned her credibility—family-planning officers subjected her to physical force in an effort to obtain urine.

We don't know whether they succeeded (the Board said they hadn't, but it is unclear what that finding was based on), but that is irrelevant; the objection is to the application of force.

The original order had not mentioned the petitioner's three-day detention. It does state that she "was never . . . detained . . . *as a result of her failure to comply as directed*" (emphasis added), which may mean that she wasn't detained *because* of her refusal to give a urine sample voluntarily as it were, but for some other reason. But the next sentence states that she was not "targeted for harm" because of either that refusal or her helping her cousin evade the one-child policy—yet the detention, the unhealthy conditions of the detention, and the fine (none of which is mentioned) amounted not just to targeting her for harm, but to hitting the target. The statement in the Board's brief that "although [the petitioner] argues that her three-day detention amounts to past persecution, the Board did not abuse its discretion in reaffirming its holding that such treatment, while unpleasant, does not amount to persecution" is false. The order denying asylum did not mention the detention, let alone characterize it as merely "unpleasant."

Granted, there is a difference between opposing a policy, and the tactics to which one resorts in opposing it. See *Shardar v. Ashcroft*, 382 F.3d 318, 323 (3d Cir. 2004); *Chanco v. INS*, 82 F.3d 298, 302 (9th Cir. 1996). However abhorrent China's one-child policy may be, it would not be persecution for China to have jailed the petitioner had she assaulted the family-planning officers when they

brought her in to give a urine sample or when they forced an entrance to her cousin's house. See *Guchshenkov v. Ashcroft*, 366 F.3d 554, 559 (7th Cir. 2004); *Cruz-Samayoa v. Holder*, No. 09-3824, 2010 WL 2499423, at *5-6 (6th Cir. June 21, 2010); *Xun Li v. Holder*, 559 F.3d 1096, 1108 (9th Cir. 2009). But according to the Board, on neither occasion did she so much as "provoke" them. Nor did the Board suggest that her opposition tactics justified the treatment meted out to her by the family-planning authorities. So far as appears, the reason she was mistreated was her opposition to the one-child policy, rather than her recourse to methods of opposition that would have provided an independent justification for the mistreatment. (On the distinction, see *Shardar v. Ashcroft*, *supra*, 382 F.3d at 323; *Cruz-Samayoa v. Holder*, *supra*, at *7.) The Board's only grounds for denying asylum were that the authorities' treatment of her was not severe enough to amount to persecution and that she has nothing to fear from them if she is returned to China.

Whether in China's prudish culture the pulling down of an 18-year-old girl's pants by officers who were using force to try to extract urine from her, jailing her until her family paid a fine equal to a third of her year's wages, and feeding her tainted food in the jail amounted to persecution is an issue in the first instance for the Board to decide. So far as we can determine from its orders, it has yet to decide it. First it overlooked the critical facts, and then it unconvincingly denied having overlooked them. The petition for review is therefore granted, the denial of the motion to reconsider is vacated, and the

case is returned to the Board for further proceedings consistent with this opinion.