In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3296

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ORVIL DUANE HASSEBROCK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:09-CR-30080-MJR-1—**Michael J. Reagan**, *Judge.*

ARGUED SEPTEMBER 15, 2011—DECIDED NOVEMBER 22, 2011

Before FLAUM, MANION, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge.* Orvil Duane Hassebrock was convicted by a jury of tax evasion, a felony offense under 26 U.S.C. § 7201, and failure to file a tax return for the 2004 tax year, a misdemeanor offense under 26 U.S.C. § 7203. He appeals the district court's denial of his motions for a judgment of acquittal and for a new trial. Hassebrock also raises several arguments for the first time on appeal, relating to his right to a speedy trial, the

charges in his indictment, and the absence of a lesser included offense instruction. Finally, he challenges the sentence imposed by the district court.

Regarding the various arguments that Hassebrock presents for our review, we find nearly all of them waived or devoid of merit. With respect to the narrow issue of restitution, we conclude that, although the district court possessed the statutory authority to impose restitution as a condition of supervised release, we are unclear as to whether it acted pursuant to this authority in its order of restitution. For the following reasons, we affirm in part, vacate in part, and remand for further proceedings.

## I.  Background

Hassebrock earned income in the 2004 tax year from the proceeds of his oil business, including a $2.5 million settlement, but he neither filed a 2004 federal tax return nor requested a filing extension on or before the April 15, 2005 deadline. Hassebrock was indicted on charges of willfully attempting to evade and defeat the payment of taxes in the approximate amount of $593,557 in violation of 26 U.S.C. § 7201 (Count I) and willfully failing to file an income tax return in violation of 26 U.S.C. § 7203 (Count II). He pleaded not guilty on July 7, 2009.

At trial, Hassebrock's accountant testified that Hassebrock had asked him on February 16, 2005 to calculate his 2004 federal tax liability. The accountant prepared two draft returns, estimating Hassebrock's tax liability inclusive and exclusive of the settlement proceeds, but

Hassebrock did not request that his accountant take any further action by April 15, 2005. Although Hassebrock introduced evidence of an extension request dated August 12, 2005, the government disputed its validity and further argued that the crime was completed as soon as Hassebrock failed to file his return on April 15, 2005.

On April 29, 2010, a jury found Hassebrock guilty on both counts. In a special verdict form, completed at the request of Hassebrock's counsel, the jury determined that Hassebrock had willfully failed to file his 2004 return on or before April 15, 2005 but that he had not willfully failed to file it on or before October 15, 2005. Hassebrock then filed a motion for judgment of acquittal and a motion for a new trial. The district court denied both of these motions.

On September 30, 2010, the district court sentenced Hassebrock to 32 months' imprisonment for Count I and a consecutive 4 months' imprisonment for Count II. The court also ordered 36 months of supervised release for Count I and 12 months of supervised release for Count II, to run concurrently. Finally, the court imposed an assessment of $125.00, an incarceration fine of $74,000.00, and restitution in the amount of $997,582.19.

## II. Discussion

On appeal and represented by new counsel, Hassebrock argues that his convictions should be vacated because his statutory and constitutional right to a speedy trial was

violated. He also contends that he is entitled to a new trial because his indictment was duplicitous or, in the alternative, multiplicitous. Similarly, he maintains that he was deprived of due process because the indictment required a lesser included offense instruction, which he did not receive. Hassebrock further argues that the district court erred in denying his motions for acquittal and a new trial because insufficient evidence supported the convictions. Finally, Hassebrock challenges the procedure, substance, and statutory authority for his sentence. We address each argument in turn.

## A. Hassebrock's Right to a Speedy Trial

Hassebrock argues that his right to a speedy trial, as guaranteed by the Speedy Trial Act and by the Sixth Amendment of the United States Constitution, has been violated by the 286-day period between his first appearance and the start of his trial. He concedes that he is raising these arguments for the first time in this appeal, yet he urges us to view his statutory argument as merely forfeited rather than waived. Hassebrock further contends that the Speedy Trial Act waivers that he executed are invalid. We do not agree, and we conclude that Hassebrock waived his statutory right to a speedy trial and that his constitutional right, though not waived, was not violated. Most of the delays stemmed from repeated requests for continuances by Hassebrock's own counsel and almost certainly strengthened the counsel's ability to mount a sound defense for Hassebrock.

**1. Speedy Trial Act**

Pursuant to the Speedy Trial Act, criminal trials must commence within 70 days of the indictment or the defendant's initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). The Act enumerates delays that shall be excluded from the 70-day clock, recognizing that certain delays leading up to trial are justifiable. *Id.* § 3161(h); *see also United States v. O'Connor*, 656 F.3d 630, 635-36 (7th Cir. 2011). Hassebrock alleges that 286 non-excludable days elapsed between his initial appearance on July 7, 2009 and the commencement of trial on April 23, 2010. We need not engage in the process of determining which days during this period are excludable, however, because we find that Hassebrock waived his statutory right by failing to move to dismiss the indictment prior to trial.

The remedy for a violation of the Act's 70-day limit is dismissal of the indictment, but the defendant must move for dismissal of the indictment prior to trial. 18 U.S.C. § 3162(a)(2); *see also United States v. Broadnax*, 536 F.3d 695, 699 (7th Cir. 2008). In unambiguous terms, the Speedy Trial Act states that the "[f]ailure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal." 18 U.S.C. § 3162(a)(2).

Hassebrock concedes that he did not raise this objection in a motion to dismiss prior to trial but asks us to view his claim as merely forfeited, which would entitle him to plain error review of his claim. The express terms of the Speedy Trial Act do not permit this interpretation. *See id.*; *O'Connor*, 656 F.3d at 636-37; *United States v. Gearhart*, 576 F.3d 459, 462 & n.2 (7th Cir. 2009) (observing

that "every circuit to consider the issue has held that the failure to move for dismissal under the act constitutes a waiver, not merely a forfeiture"). The general rule that we review claims not asserted in the district court for plain error pursuant to Federal Rule of Criminal Procedure 52(b) does not apply to claims involving the Speedy Trial Act because the Act sets forth waiver as the sole consequence for failing to assert the claim below. *See O'Connor*, 656 F.3d at 637.

Hassebrock makes three flawed attempts to demonstrate that we may (and should) review his claim for plain error. First, he points out that we stated in *United States v. Morgan* that "we have reviewed a defendant's statutory speedy trial claim for plain error even though it was never presented to the district court." 384 F.3d 439, 442 (7th Cir. 2004). But this statement from *Morgan* served only to summarize the inconsistent approach that we had previously taken before articulating the clear holding that failure to assert a right under this Act constitutes waiver and not forfeiture. *Id.* at 442-43. In fact, we anticipated the very argument that Hassebrock now advances by announcing in *Morgan* that we do not view these earlier cases as "contrary precedent" because they erroneously overlooked § 3162(a)(2). *Id.* at 443.

Hassebrock next argues that we should reevaluate our waiver decisions in *Morgan* and *Gearhart* in light of the Supreme Court's decisions in *Zedner v. United States*, 547 U.S. 489 (2006), *Bloate v. United States*, 130 S. Ct. 1345 (2010), and *United States v. Tinklenberg*, 131 S. Ct. 2007 (2011). But *Zedner* focused primarily on the propriety of

prospective waivers under the Speedy Trial Act, *see* 547 U.S. at 500-03, and the requirement that an express finding accompany a district court's grant of an ends-of-justice continuance, *see id.* at 503-09. *Bloate* and *Tinklenberg* addressed only narrow questions concerning which delays are excluded from the Act's 70-day limit. *See Tinklenberg*, 131 S. Ct. at 2010-16; *Bloate*, 130 S. Ct at 1349, 1351-53. Had Hassebrock moved to dismiss his indictment, these cases might have become relevant to the determination of whether his rights under the Act were violated. But not one of these cases makes any assertion that calls into question the well-established conclusion that failure to move to dismiss constitutes waiver under the Act. In fact, our decision in *O'Connor*, decided after *Zedner* and *Bloate*, suggests just the opposite—we found *Zedner*'s emphasis on the defendant's "role of spotting violations of the Act" to support an expansion of the application of waiver to a defendant who actually moved to dismiss on one ground but not on others. *O'Connor*, 656 F.3d at 637-38 (quoting *Zedner*, 547 U.S. at 502-03).

Finally, Hassebrock argues that the written waivers of his rights under the Speedy Trial Act are invalid. Hassebrock filed motions to continue on July 10, 2009 and on December 17, 2009. The first motion requested a continuance of at least six months because Hassebrock's new counsel had not yet reviewed discovery, needed additional time to prepare the defense, and had another upcoming trial. The second motion requested a continuance of six weeks based on a possible scheduling conflict. Hassebrock now contends that the waivers affixed

to those motions are invalid based on the Supreme Court's holding regarding prospective waivers in *Zedner*.

*Zedner* held that a defendant may not prospectively waive his right to a speedy trial, *see* 547 U.S. at 500, but *Zedner* is distinguishable from this case on several grounds. First, the defendant in *Zedner* had waived his speedy trial rights "for all time" and had waived his right to move to dismiss the indictment for failure to hold a speedy trial, *id.* at 493-94, while Hassebrock consented only to six-month and six-week waivers and retained his right to move to dismiss the indictment, a right which he did not attempt to exercise until the present appeal. Second, the judge in *Zedner* had solicited the waiver from the defendant, *see id.*, whereas Hassebrock consented to this waiver to help counsel prepare his defense.

Finally, *Zedner* distinguished between prospective waivers (i.e., waivers made expressly by the defendant prior to trial that disclaim any rights under the Speedy Trial Act) and retrospective waivers (i.e., waivers made unintentionally by the defendant by failing to move to dismiss based on a speedy trial violation prior trial). *Id.* at 502 ("[T]here is no reason to think that Congress wanted to treat prospective and retrospective waivers similarly. . . . The sort of retrospective waiver allowed by § 3162(a)(2) does not pose a comparable danger because the prosecution and the court cannot know until the trial actually starts or the guilty plea is actually entered whether the defendant will forgo moving to dismiss."). The defendant in *Zedner* had actually moved

to dismiss his indictment for violating the Act, but the district court denied his motion based on his prospective waivers. In contrast, there is no question that Hassebrock has retrospectively waived his rights. The *Zedner* Court reaffirmed a defendant's ability to retrospectively waive his rights under the Act. *See id*. Because we conclude that Hassebrock validly waived his rights retrospectively by failing to move to dismiss, we need not decide whether Hassebrock's express waiver constituted a prospective waiver, whether all express waivers are invalid under *Zedner,* and whether the attachment of an express waiver to an otherwise valid motion to continue invalidates the motion.[1]

---

[1] Courts in other Circuits have considered whether any prospective waivers are valid under *Zedner* and have reached opposing conclusions. *Compare United States v. Williamson*, 319 F. App'x 734, 737 n.1 (10th Cir. 2009) (upholding defendant's prospective waiver and finding that *Zedner* bars defendants only from opting out of the Act "entirely" and waiving rights "for all time"), *and United States v. Marquez*, 602 F. Supp. 2d 285, 287-89 (D. Mass. 2009) (distinguishing *Zedner* as involving a "blanket prospective waiver" and finding that holding in *Zedner,* the language of the Speedy Trial Act, and the plain meaning of "continuance" all contemplate the continued validity of prospective continuances), *with United States v. Turner*, 602 F.3d 778, 783 (6th Cir. 2010) (holding that the Act "does not allow defendants to waive a deadline prospectively" and citing *Zedner*), *and United States v. Taylor*, 497 F.3d 673, 676-77 (D.C. Cir. 2007) (finding that the defendant's prospective waiver "had no effect" due to *Zedner*).

**2. Sixth Amendment Speedy Trial Claim**

Hassebrock mentions in his opening brief that the Speedy Trial Act is a codification of the defendant's right to a speedy trial under the Sixth Amendment. *See* U.S. CONST. amend. VI. That is his sole reference to the constitutional right to a speedy trial. Nowhere does Hassebrock allege directly that his Sixth Amendment right was violated. He does not present any arguments in support of this claim or apply the four-factor test from *United States v. Gearhart* for determining whether a constitutional speedy trial violation occurred.

We question whether Hassebrock intended to allege a violation of his Sixth Amendment right to a speedy trial. Even assuming that he did assert this violation, we find the argument decidedly underdeveloped and therefore waived. *See Trentadue v. Redmon*, 619 F.3d 648, 654 (7th Cir. 2010); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."). A defendant's statutory right and constitutional right to a speedy trial are not identical, and thus we cannot simply transfer his arguments in support of a violation of the statute to arguments in support of a violation of the Constitution. *See O'Connor*, 656 F.3d at 643 ("[W]hile related, the constitutional and statutory rights are distinct."); *Gearhart*, 576 F.3d at 462.

We do note that the government, rather than argue that Hassebrock waived his Sixth Amendment claim,

applied the *Gearhart* test in its brief and argued that the test dictates a finding in its favor. We have previously found that a party can waive a waiver argument by failing to raise it. *See, e.g.*, *Qiu Ping Li v. Holder*, 612 F.3d 603, 604 (7th Cir. 2010); *United States v. Moore*, 563 F.3d 583, 585 (7th Cir. 2009). Nevertheless, we have also recognized that the waiver doctrine is "designed for our own protection as much as that of an opposing party, and therefore need not be asserted by a party for us to invoke it." *Freeman United Coal Mining Co. v. Office of Workers' Comp. Programs, Benefits Review*, 957 F.2d 302, 305 (7th Cir. 1992). Although we have no obligation to consider Hassebrock's Sixth Amendment claim, we can easily address and reject the claim on the merits.

This constitutional claim is reviewed for plain error due to Hassebrock's failure to raise this argument below. *See O'Connor*, 656 F.3d at 643; *Gearhart*, 576 F.3d at 462-63. "We evaluate constitutional speedy trial challenges based on a four-part test: (1) whether the delay was uncommonly long, (2) whether the government or the defendant is more to blame for the delay, (3) whether the defendant asserted his right to a speedy trial in due course and (4) whether the defendant suffered prejudice as a result of the delay." *Gearhart*, 576 F.3d at 463 (citing *Doggett v. United States*, 505 U.S. 647, 651-52 (1992), and *United States v. White*, 443 F.3d 582, 589-90 (7th Cir. 2006)).

The first factor of the analysis looks at the length of the delay. This factor "is not so much a factor as it is a threshold requirement." *United States v. Loera*, 565 F.3d 406, 412 (7th Cir. 2009). We have also stated that delays ap-

proaching one year are "presumptively prejudicial." *White*, 443 F.3d at 589-90. The delay in Hassebrock's case lasted for at most 286 days. A delay of 9.5 months does not seem to be "approaching" this one-year threshold. Because we have not set a clear cutoff, however, we briefly turn to the remaining factors.

The second factor looks to whether the government or the defendant is more responsible for the delay. In this case, the government did not request any continuances. The defendant, on the other hand, requested two continuances. The defendant is held responsible for delay that results when the defendant seeks and obtains a continuance. *See Gearhart*, 576 F.3d at 463. The first motion requested that the trial date be continued for at least six months for various reasons related to giving defense counsel the opportunity to prepare. The second motion identified a possible scheduling conflict, though the record is not clear as to whether the defendant or the district court was the source of the conflict. The government acknowledges that the final month of delay was due to the court's scheduling conflict. "[W]hile delays resulting from defense counsel's need to prepare are attributable to the defendant, delays resulting from a trial court's schedule are ultimately attributed to the government, but weighted less heavily." *United States v. Hills*, 618 F.3d 619, 630 (7th Cir. 2010) (citations omitted). Therefore, Hassebrock bears more of the responsibility than the government for the delay in starting the trial.

The third factor looks to whether the defendant timely asserted his right to a speedy trial. As stated above,

Hassebrock did not do so because he did not raise this claim at any time while he was awaiting trial. This factor weighs in favor of the government.

The fourth factor examines whether the defendant suffered any prejudice as a result of the delay. Hassebrock has not made any claim that the delay has prejudiced him. "We examine prejudice resulting from a delay in trial in light of the interests that the Sixth Amendment seeks to protect." *Hills*, 618 F.3d at 632. The Sixth Amendment right to a speedy trial seeks to "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that defense will be impaired." *White*, 443 F.3d at 591 (internal quotation marks omitted). Hassebrock was not incarcerated, has not alleged any anxiety that he suffered, and has not pointed to any ways in which his defense was impaired.

Even granting Hassebrock the benefit of reaching the merits on a claim that was barely presented and insufficiently developed, we find no support under *Gearhart* for a Sixth Amendment violation caused by the pretrial delay.

## B. Hassebrock's Indictment

Hassebrock argues for the first time on appeal that his indictment was duplicitous or, in the alternative, multiplicitous. An indictment that charges two or more distinct offenses within a single count is duplicitous. *United States v. Smith*, 26 F.3d 739, 753 (7th Cir. 1993). An indictment that charges a single offense in more than

one count is multiplicitous. *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995).

Because Hassebrock did not raise these objections before trial, we review these arguments under plain error review, if at all. *See United States v. Conley*, 291 F.3d 464, 469-70 (7th Cir. 2002) (multiplicitous claim); *United States v. Magana*, 118 F.3d 1173, 1189 (7th Cir. 1997) (duplicitous claim). Though we may review these waived arguments, we have no obligation to do so. *See Magana*, 118 F.3d at 1189.

Here, we deem these challenges to the indictment waived, thereby requiring no review, because Hassebrock fails to provide relevant evidence to support his claims and fails to provide any explanation for not raising these claims before trial (or in any of his post-trial motions). *See United States v. Simone*, 931 F.2d 1186 (7th Cir. 1991); *United States v. Petitjean*, 883 F.2d 1341, 1344 (7th Cir. 1989).

Even if we had decided to reach the merits of Hassebrock's duplicity and multiplicity claims, the result would not change because Hassebrock has not established that any plain error occurred. Under plain error review, we must determine: "(1) that error occurred; (2) that the error was plain; and (3) that the error affected the defendant's substantial rights." *United States v. Luepke*, 495 F.3d 443, 448 (7th Cir. 2007).

With respect to the claim of duplicity, Hassebrock argues that the jury was confused as to whether he could be found guilty of willfully failing to file his tax return

on or before April 15, 2005, as charged in Count II, if he was granted a filing extension by the IRS on August 12, 2005. Hassebrock contends that certain jury instructions added to this confusion. Although the jury convicted Hassebrock of Count II, the Special Verdict form indicated that the jury found him guilty of willfully failing to file his tax return on or before April 15, 2005 but not guilty of willfully failing to file his tax return on or before October 15, 2005. Although the jury's verdict may suggest some confusion over the nature of Count II, the charging language in the indictment does not evince a clear error of a duplicitous nature. Hassebrock was entitled to present evidence that he received a filing extension but that does not influence the propriety of the charge. *See United States v. Ming*, 466 F.2d 1000, 1005 (7th Cir. 1972) (holding that a late filing of a tax return is "immaterial on the issue of willfulness in a Section 7203 prosecution").

With respect to the claim of multiplicity, we have previously established that 26 U.S.C. § 7201 and 26 U.S.C. § 7203 contain separate offenses and that a conviction under both does not violate Double Jeopardy. *See United States v. Foster*, 789 F.2d 457, 460 (7th Cir. 1986) ("All guides to legislative intent suggest that Congress meant §§ 7201 and 7203 to constitute separate offenses and that [defendant's] convictions for both offenses do not violate the double jeopardy clause."). We have subsequently recognized this rule as "well settled in this Circuit." *United States v. Becker*, 965 F.2d 383, 390-91 (7th Cir. 1992). In *Becker*, we explained that § 7201 (but not § 7203) requires

an affirmative act; conversely, § 7203 (but not § 7201) requires a failure to file a return. *Id.*

Hassebrock argues that *Foster* and *Becker* fail to recognize that the Supreme Court stated in *Sansone v. United States*, 380 U.S. 343, 351 (1965), that § 7203 is a lesser included offense of § 7201 where a prosecution for § 7201 involves "a disputed issue of fact as to the existence of the requisite affirmative commission in addition to the [§] 7203 omission." Although the defendant in *Sansone* did not raise a multiplicity challenge to his indictment, the Court's conclusion regarding the lesser included offense instruction bears on this type of challenge as well. In cases in which the Court deems § 7203 to be a lesser included offense of § 7201, an indictment that charges the defendant with both offenses (based on the same act of omission) may be multiplicitous. Although we appreciate the possible tension generated by the position that we announced in *Foster*, we are not inclined to reconsider that position here where our review is solely for plain error. Hassebrock waived his multiplicity argument by failing to present it before trial and failed to persuasively argue that his case falls into the category of cases identified by *Sansone*.

## C.  Lesser Included Offense Instruction

Hassebrock's next claim is similar to his multiplicity claim and contends that the district court erred by failing to give a lesser included offense instruction. He concedes that nothing in the record indicates that his counsel requested this instruction at trial. Because Hassebrock

did not request this specific instruction below, we review only for plain error. *United States v. Johnson*, 655 F.3d 594, 605 (7th Cir. 2011); *United States v. Cooper*, 942 F.2d 1200, 1206 (7th Cir. 1991). The initial step in plain error review is to determine whether an error occurred. *See Luepke*, 495 F.3d at 448. It was not an error to decline to give a lesser included offense instruction because we have repeatedly reaffirmed *Foster*'s holding that § 7203's charge of willful failure to file is not a lesser included offense of § 7201's charge of tax evasion. *See Becker*, 965 F.2d at 390-91 (finding this issue of law to be "well settled in this Circuit"); *United States v. Defazio*, 899 F.2d 626, 636 (7th Cir. 1990) (finding the lesser included offense argument to be "foreclosed in this circuit" by *Foster*).

Hassebrock urges us to reconsider our position given *Sansone*'s dicta and the contrary position taken by other circuits. *See, e.g., United States v. Helmsley*, 941 F.2d 71, 99 (2d Cir. 1991); *United States v. DeTar*, 832 F.2d 1110 (9th Cir. 1987). Hassebrock failed to preserve this argument for de novo review due to his failure to request the lesser included offense instruction at trial. *See United States v. Ye*, 588 F.3d 411 (7th Cir. 2009). Moreover, ample evidence in the record suggests that Hassebrock engaged in affirmative acts of tax evasion beyond a mere failure to file, thereby rendering a lesser included offense instruction inappropriate even under *Sansone*. We therefore decline this invitation to revisit our conclusion in *Foster* and its progeny that § 7203 is a separate offense and not a lesser included offense of § 7201.

**D. Sufficiency of the Evidence**

Unlike his previous arguments, Hassebrock has pre-served his sufficiency of the evidence argument for our review by filing timely motions for a judgment of acquittal and for a new trial.

**1.   Denial of Hassebrock's Motion for a Judgment of Acquittal**

We review de novo the district court's decision to deny Hassebrock's motion for a judgment of acquittal. *United States v. Mandel*, 647 F.3d 710, 717 (7th Cir. 2011). When evaluating a defendant's sufficiency-of-the-evidence argument, "[w]e consider the evidence in the light most favorable to the prosecution, making all reasonable infer-ences in its favor, and affirm the conviction so long as any rational trier of fact could have found the defendant to have committed the essential elements of the crime." *United States v. Paneras*, 222 F.3d 406, 410 (7th Cir. 2000) (quoting *United States v. Masten*, 170 F.3d 790, 794 (7th Cir. 1999)). We will overturn the guilty verdict "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Huddleston*, 593 F.3d 596, 601 (7th Cir. 2010). Thus, a defendant who moves for a judgment of acquittal "faces a nearly insur-mountable hurdle." *United States v. Morris*, 576 F.3d 661, 665-66 (7th Cir. 2009) (quoting *United States v. Pulido*, 69 F.3d 192, 205 (7th Cir. 1995)).

### a.  Count I: 26 U.S.C. § 7201

To sustain the conviction under § 7201, the evidence must show that: (1) a tax deficiency existed, (2) the defendant acted willfully, and (3) the defendant took an affirmative step to elude or defeat the payment of taxes. *United State v. Beall*, 970 F.2d 343, 345 (7th Cir. 1992). Hassebrock challenges only the second and third elements. The crux of his argument is that his 2004 tax return was not due on April 15, 2005, and therefore his failure to file by that date does not constitute an affirmative act. During cross-examination, IRS Agent Richard Dutzel admitted that Hassebrock's extension was filed in August 2005 and that the IRS "allowed" it. Hassebrock thus argues that the government is estopped from arguing that he failed to file by April 15, 2005.

We agree, as did the district court, with the government's three-pronged response to Hassebrock's claim. First, Hassebrock had a legal obligation to file on or before April 15, 2005, this obligation was embodied in the offenses charged, and Hassebrock did not satisfy this obligation. Second, a reasonable juror could have reached the conclusion that Hassebrock's extension was not truly approved by the IRS. The signature lines for the taxpayer and the IRS director were blank, and there is no evidence that Hassebrock received the form from the IRS. Third, the government presented evidence of other affirmative acts taken by Hassebrock, negating the significance of establishing failure to file as the affirmative act in support of liability under § 7201. For example, Dan Goggin, one of Hassebrock's attorneys, testified

that Hassebrock visited his office to set up trust accounts that were not in his own name. Evidence adduced at trial demonstrated that Hassebrock placed the funds from the settlement into those accounts, that he nevertheless used the accounts for his personal use, and that the individuals named on the accounts hardly used the accounts at all. Hassebrock denies that these actions are proof of tax evasion, but an act does not need to conclusively establish that it was taken in furtherance of the tax evasion to qualify as an affirmative act. The jury was permitted to infer intent from circumstantial evidence. *United States v. King*, 126 F.3d 987, 993 (7th Cir. 1997) ("Tax evasion cases 'simply require that there be some evidence from which a jury could infer an intent to mislead or conceal beyond mere failure to pay assessed taxes; it is for the jury to determine, as a matter of fact, whether the affirmative act was undertaken, in part, to conceal funds from or mislead the government.' " (quoting *United States v. Voigt*, 89 F.3d 1050, 1090 (3d Cir. 1996))).

We further agree with the district court's determination that sufficient evidence was introduced at trial to support a conclusion that Hassebrock acted willfully. Sam Phillips, Hassebrock's accountant, testified that Hassebrock had come to his office to inquire about the tax liability of the settlement funds. Phillips prepared two sample returns, one that included the settlement funds and one that did not. The district court concluded, and we concur, that this evidence adequately demonstrates Hassebrock's willfulness because he knew of the higher tax liability associated with the settlement.

Thus, even if we assume arguendo that Hassebrock did receive a filing extension, his conviction on Count I still rests on sufficient evidence.

### b. Count II: 26 U.S.C. § 7203

To sustain a conviction under § 7203, the evidence must show that the defendant: (1) was required to file a return, (2) failed to file a return, and (3) acted willfully in failing to file. *Beall*, 970 F.2d at 347. The government must prove that the defendant failed to file "willfully or purposefully, as distinguished from inadvertently, negligently, or mistakenly." *United States v. Matosky*, 421 F.2d 410, 413 (7th Cir. 1970). Hassebrock argues that unrebutted evidence shows that he received an extension, that he was not required to file his 2004 taxes until October 15, 2005, and that the government failed to prove that he acted willfully in failing to file his return by April 15, 2005.

The evidence regarding the granting of an extension is not as strong as Hassebrock claims. In addition to missing signatures of both Hassebrock and the IRS director, there was no evidence that Hassebrock established "undue hardship," which is a prerequisite for approving extension requests made after April 15. Further, although Agent Dutzel testified that it appeared that the extension request was "allowed," he lacked direct knowledge of the issue and made this comment in the context of an unrelated issue. Viewing the evidence in the light most favorable to the prosecution, as it must, the district court determined that the evidence indicated only that "the extension has not been blocked from being processed

and filed, not that the extension had been granted" and that a "reasonable juror could have concluded that Hassebrock's application was not approved."

Hassebrock argues on appeal that the district court failed to explain how the jury could have found that the extension was not approved and yet indicated in the special verdict form that Hassebrock did not willfully fail to file an individual income tax return by October 15, 2005. While we admit that this is slightly puzzling, it is clear that the totality of the evidence satisfies the requirements for proving a § 7203 violation. We have held that "late filing and late tax payment are immaterial on the issue of willfulness in a Section 7203 prosecution." *United States v. Sawyer*, 607 F.2d 1190, 1193 (7th Cir. 1979) (quoting *Ming*, 466 F.2d at 1005). In line with this precedent, the district court stated that Hassebrock's "crime was completed at 12:00:01 on April 16, 2005." In other words, regardless of whether the IRS approved the August 12, 2005 request for an extension, the IRS did not approve any extension on or before April 15, 2005, the deadline for filing his 2004 tax return. Phillips testified that Hassebrock did not ask him to file an extension during their February 2005 meeting, did not ask him to prepare a 2004 return during their May 2005 meeting, and only casually asked him to file a late return for 2004 "[p]robably in 2006 sometime." Therefore, given the strong evidence that Hassebrock did not receive an extension prior to April 15, 2005 (and may not have received an extension at all), the district court correctly determined that a jury could have reasonably concluded that Hassebrock violated § 7203.

### 2. Denial of Hassebrock's Motion for a New Trial

The district court also denied Hassebrock's motion for a new trial. A motion for a new trial that is based on the sufficiency of the evidence should be granted "only if the verdict is against the manifest weight of the evidence." *Riemer v. Ill. Dep't of Transp.*, 148 F.3d 800, 806 (7th Cir. 1998). We review the denial of a motion for a new trial for abuse of discretion. *United States v. Willis*, 523 F.3d 762, 771 (7th Cir. 2008).

Hassebrock contends that evidence of the filing extension preponderates heavily against the jury's verdict. This argument is essentially the same as the sufficiency argument that Hassebrock asserted in his motion for a judgment of acquittal. As previously noted, it is questionable whether his extension was truly granted. Further, even if it was granted, the jury still could have found that Hassebrock failed to file his tax returns on or before April 15, 2005, several months before he sent in any request for an extension. Given the weaknesses of Hassebrock's defenses and the need to draw all inferences in favor of the government, we conclude that the district court did not abuse its discretion when it declined to upset the jury's verdict in this case. Even when evidence is contradictory, "[i]t's the jury's job—not the district court's job or the job of a panel of appellate judges—to figure out who's telling the truth." *Lowe v. Consol. Freightways of Del.*, 177 F.3d 640, 642-43 (7th Cir. 1999) ("The fact that [the defendant] presented evidence that is inconsistent with the jury's verdict does not mean that the verdict should be reversed. . . . The jury was

there; it weighed the witnesses' credibility, considered the evidence, and reached a supportable conclusion."). We therefore affirm the district court's decision to deny Hassebrock's motion for a new trial.

### E. Hassebrock's Sentence

Hassebrock challenges his sentence on three grounds: the propriety of the sentencing procedure, the substantive reasonableness of the sentence, and the authority of the district court to impose restitution.

#### 1. Sentencing Procedure

As an initial matter, we review de novo the legal question of whether the district court followed the proper sentencing procedure, but we review factual findings only for clear error. *United States v. Pulley*, 601 F.3d 660, 664 (7th Cir. 2010). Hassebrock alleges that the district court incorrectly arrived at a level 20 guideline with an imprisonment range of 33 to 41 months for a defendant with no criminal history. The United States Probation Office for the Southern District of Illinois ("USPO") recommended this level, based on §§ 2T1.1(a)(1) and 2T4.1(H) of the United States Sentencing Guidelines ("Guidelines"), finding that the tax loss[2] resulting from the offense was greater than $400,000 but not greater

---

[2] Tax loss refers to the amount of tax that the taxpayer owed but did not pay.

than $1,000,000. According to the Guidelines, "If the offense involved failure to file a tax return, the tax loss shall be treated as equal to 20% of the gross income . . . less any tax withheld or otherwise paid, unless a more accurate determination of the tax loss can be made." U.S.S.G. § 2T1.1(c)(2)(A). The government determined Hassebrock's 2004 gross income to be $2,032,303.71. Twenty percent of this gross income is $406,460.74, which falls within level 20. In addition to this method of calculation, Hassebrock's accountant testified to an estimated tax liability of $599,121, and IRS Agent Michael Gilmore estimated the tax liability at $593,514. All three of these estimates exceed the $400,000 threshold, thereby making level 20 the appropriate sentencing guideline.

Though Hassebrock does not present an alternative calculation on appeal, he contests the amount used by the district court. At the outset, we reject Hassebrock's argument that the district court could not have properly sentenced him in the absence of a filed 2004 tax return from Hassebrock to use to determine tax loss. Hassebrock cannot use the conduct that led to his conviction as the reason that he cannot be sentenced. Next, Hassebrock argues that the district court should have deducted the value of a safe containing at least $11,000 that was seized by law enforcement during the execution of a search warrant. He argues that these assets qualify as "tax withheld or otherwise paid" under U.S.S.G. § 2T1.1(c)(2)(A), but he provides no factual support that these assets were used as partial payment of his 2004 taxes owed. Finally, Hassebrock argues that legitimate deductions will reduce the amount of the assessment once his 2004 tax

return is ultimately filed. We have recognized that "tax loss" refers to "the amount of loss that the defendant *attempted* or *intended* to create through his tax offense" and not to "the *actual* amount of loss suffered by the government." *United States v. Chavin*, 316 F.3d 666, 677-78 (7th Cir. 2002) (holding that unclaimed but legitimate deductions are not considered when calculating tax loss under U.S.S.G. § 2T1.1).

It is well settled that the district court applies the Guidelines method of calculating tax loss unless a more accurate rate can be determined. *See* U.S.S.G. § 2T1.1(c)(2)(A); *United States v. Hoover*, 175 F.3d 564, 568 (7th Cir. 1999). The district court is best positioned to determine whether any testimony or evidence presented by the defendant offers a more accurate estimate of his gross income. *See United States v. Valenti*, 121 F.3d 327, 334 (7th Cir. 1997) (affirming the district court's application of the Guidelines method for determining tax loss rather than the defendant's); *see also United States v. Wu*, 81 F.3d 72, 75 (7th Cir. 1996) (rejecting the notion that courts have any responsibility "to comb the books of convicted tax evaders seeking ways in which they could have lowered their tax liability and their sentences"). The district court in this case properly relied on the methodology laid out in the Guidelines to calculate Hassebrock's tax loss.

## 2. Substantive Reasonableness of Sentence

Hassebrock next challenges the substantive reasonableness of his sentence. We review the substantive

reasonableness of a sentence for abuse of discretion, and a "correctly calculated, within-Guidelines sentence is entitled to a presumption of reasonableness." *Pulley*, 601 F.3d at 664. The district court accepted the findings of the Presentence Investigation Report ("PSR") and imposed a sentence that fell within the Guidelines. The court properly considered the trial record, the PSR, Hassebrock's testimony, and the factors listed in 18 U.S.C. § 3553(a).[3]

In support of a sentence on the higher end of the sentencing level, the district court noted that Hassebrock consciously disobeyed his obligation to pay taxes, joined a fictitious Native American tribe to avoid his tax obliga-

---

[3] The factors in § 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available . . . .

18 U.S.C. § 3553(a).

tion, and attempted to pay taxes with fraudulent sight drafts. The court further criticized Hassebrock for failing to accept responsibility for his actions, a step that could have reduced the sentencing level. Referencing the § 3553(a) factors and using language that mirrors the introductory comments of U.S.S.G. § 2T1.1, Judge Reagan announced at the sentencing hearing:

> [T]he crux of this Court's decision to imprison Mr. Hassebrock is based upon two things. It is the need to deter criminal conduct and the need to promote respect for the law as well as just punishment for the offense. Only a sentence of incarceration can deter Mr. Hassebrock and others from tax evasion and failure to file, and a sentence of probation would not promote respect for the law, but encourage people to flaunt it. . . . Because of the limited number of criminal tax prosecutions relative to the estimated incidents of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines.

Judge Reagan further concluded that the case involved greed and that therefore the punishment should include a monetary penalty.

Hassebrock nevertheless contends that the district court issued an excessive sentence because it sought to "make an example" out of him as a tax protestor. He does not cite any specific factual allegations to support a claim of bias, and he fails to recognize that deterrence is an appropriate consideration in sentencing. The court's denial of the government's request for the cost of pros-

ecution and the court's respectful comments toward Hassebrock further belie his claim of bias.

Hassebrock argues that his lengthy sentence of imprisonment is wrongful in light of the fact that he was eligible to receive only probation; however, Hassebrock's own sentencing memorandum acknowledged that his convictions are not eligible for probation. Thus, the only argument that he is left with is that the Sentencing Commission erred in creating tax Guidelines that favor imprisonment over probation. While the district court was entitled to consider this argument, the district court was also entitled to reject it and apply a sentence in line with the Guidelines.

Hassebrock also argues that the fine imposed is impermissibly severe. He points to the fact that the government requested the minimum fine but the court nevertheless imposed a fine of $74,000 (nearly the maximum fine in the applicable level). Yet the government sought the minimum fine not in the spirit of lenity, but in recognition of "the size of that obligation that he has to the United States," referring to his restitution obligation. Judge Reagan reasoned that the fine of $74,000 was necessary to cover the costs of incarceration. District courts have the discretion to order a criminal defendant to pay the costs of incarceration. *See* U.S.S.G. § 5E1.2(d)(7) ("In determining the amount of the fine, the court shall consider . . . the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed . . . ."); *see also United States v. Turner*, 998 F.2d 534, 536 (7th Cir. 1993).

In determining the sentence, the district court carefully considered the § 3553(a) factors, particularly the nature of the offense and the need for deterrence. The court did not abuse its discretion in imposing a within-Guidelines sentence for the serious offenses that Hassebrock committed. Hassebrock's arguments are unavailing and fall significantly short of rebutting the presumption of reasonableness that we accord to a within-Guidelines sentence.

### 3. Imposition of Restitution

Finally, Hassebrock challenges his sentence by arguing that the district court does not have the authority to order restitution in cases involving tax offenses and that the amount imposed is unreasonable.

#### a. Authority to Impose Restitution

We review de novo questions of law involving the district court's authority to order restitution. *United States v. Webber*, 536 F.3d 584, 601 (7th Cir. 2008). The government properly acknowledges that restitution is not permitted pursuant to 18 U.S.C. § 3663 or 18 U.S.C. § 3663A for offenses that fall within Title 26 of United States Code.[4]

---

[4] The USPO incorrectly stated in its PSR that restitution could be ordered in this case pursuant to 18 U.S.C. § 3663(a)(3). This provision is inapplicable to this case, as it states that "[t]he court may also order restitution in any

(continued...)

However, a district court may impose restitution for Title 26 offenses as a condition of probation, *see* 18 U.S.C. § 3563(b)(2), or as a condition of supervised release, *see* 18 U.S.C. § 3583(d). Section 3583(d), the Supervised Release Statute, provides in relevant part: "The court may order, as a further condition of supervised release, . . . any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate . . . ." *See also* U.S.S.G. § 5E1.1(a)(2) ("In the case of an identifiable victim, the court shall . . . impose a term of probation or supervised release with a condition requiring restitution for the full amount of the victim's loss, if the offense is not an offense for which restitution is authorized under 18 U.S.C. § 3663(a)(1) but otherwise meets the criteria for an order of restitution under that section."); *United States v. Batson*, 608 F.3d 630, 635 (9th Cir. 2010) ("The Supervised Release Statute, together with the Probation Statute, unambiguously authorizes federal courts to order restitution as a condition of supervised release for *any* criminal offense, including one under Title 26, for which supervised release is properly imposed."); *United States v. Nolen*, 523 F.3d 331, 333 (5th Cir. 2008) ("[R]estitution may be imposed if done so as a condition of supervised release in a criminal tax case, even in the absence of a prior definitive determination or adjudication of the amount of taxes owed, and if limited to losses from the crime of

---

[4]  (...continued)

criminal case to the extent agreed to by the parties in a plea agreement."

conviction."). Thus, it is clear that district courts possess the authority to impose restitution for tax offenses as a condition of supervised release.

It is less than clear, however, whether the district court in this case actually did impose restitution as a condition of supervised release, rather than as an independent component of the sentence. The district court indicated some confusion as to its authority to order restitution during the sentencing hearing, and the PSR erroneously stated that restitution could be ordered pursuant to 18 U.S.C. § 3663(a)(3). Throughout the sentencing hearing, the government requested that the district court impose restitution and noted that the court's only authority for doing so was as a condition of probation or supervised release. Thus, although the district court did not expressly state the legal basis for its order of restitution, it had been made aware of the limits to its authority. The court linked the order of restitution to the sentence of supervised release on two occasions but stopped short of directly identifying restitution as a condition of supervised release. For example, during the sentencing hearing, Judge Reagan stated, "Restitution shall be paid . . . immediately. If you can't pay it immediately, payment will be due during imprisonment. If it is not paid during imprisonment, it will be a condition of supervised release." In the "Supervised Release" judgment form, the court referenced the order of restitution in a subsection labeled "Special Conditions of Supervision" but primarily in terms of how it would be collected.

Because a district court can only impose restitution as a condition of supervised release, a defendant cannot be required to pay restitution until his period of supervised release begins. We are therefore troubled by the district court's oral and written statements that require immediate payment of restitution. Hassebrock has apparently heeded the district court's order and has started to make payments. The district court reaffirmed its requirement of immediate payment when it denied Hassebrock's motion to stay restitution pending appeal.

When presented with a very similar situation, the Fourth Circuit determined that a remand was necessary. *United States v. Dean*, 64 F.3d 660, 1995 WL 493006, at *4 (4th Cir. 1995) (per curiam) (unpublished table decision). In *Dean*, the Fourth Circuit concluded (and the government conceded) that the district court's restitution order making payment due "immediately" indicated that the district court must have ordered restitution pursuant to 18 U.S.C. § 3663(a), rather than § 3583(d) or § 3563(b)(3). The Fourth Circuit held that the restitution order "was without statutory authorization" and remanded to allow the district court to consider the issue of restitution as a condition of supervised release. *Id.* The district court's immediacy requirement, along with its failure to explicitly label restitution as a condition of supervised release, leads us to the same conclusion in this case.

The Second Circuit, however, decided not to remand when confronted with a sentence in which the district court did not clearly set forth the basis for its order of restitution. *See United States v. Bruno*, 234 F.3d 1263, 2000

WL 1715254, at *3-4 (2d Cir. 2000) (unpublished table decision). The Second Circuit noted that the district court had not cited to any statutory authority for its order, that the PSR did not reference § 3663(a), and that the judgment form listed restitution as one of the "Additional Supervised Release Terms." *Id.* Despite acknowledging that the district court's oral statement may have been "ambiguous," the Second Circuit found "no reason to believe that the court was not imposing restitution as a special condition of supervised release." *Id.* at *4. By contrast, the record in the present case is not simply ambiguous but also conflicting, which does gives us reason to believe that the court did not impose restitution as a condition of supervised release.

For Title 26 offenses, a district court is only authorized to impose restitution as a condition of probation or as a condition of supervised release. Given that the government carefully explained the court's authority, it seems likely that the court was aware that it could only impose restitution as a condition of supervised release. But because a degree of uncertainty remains, we remand for the limited purpose of allowing the district court to clarify the statutory basis for its order of restitution. The district court does not have the authority to impose restitution pursuant to § 3663, nor does it have the authority to require immediate payment when imposing restitution as a condition of supervised release. The district court does, however, have the authority to reimpose the same restitution order, provided that the court clarifies that it is imposing restitution pursuant to § 3583(d).

### b. Amount of Restitution Imposed

Our concern with the district court's imposition of restitution rests only with the questionable basis and not with the actual amount. Despite Hassebrock's objections, we conclude that the district court did not abuse its discretion when it determined the amount of restitution to impose.

We review a district court's calculation of restitution only for abuse of discretion, and we view the evidence in the light most favorable to the government. *Webber*, 536 F.3d at 601. The amount of restitution is limited to the losses caused by the specific conduct underlying the offense for which the defendant was convicted. *See* 18 U.S.C. § 3663A(a). The prosecutor must establish the amount of loss by a preponderance of the evidence. *See United States v. Hosking*, 567 F.3d 329, 332-33 (7th Cir. 2009) (citing 18 U.S.C. § 3664(e)). Yet the Guidelines also recognize that it may be impossible to make a perfect calculation and that the court may need to "simply make a reasonable estimate based on the available facts." *United States v. O'Doherty*, 643 F.3d 209, 218-19 (7th Cir. 2011) (quoting U.S.S.G. § 2T1.1, app. 1). We have emphasized that the district court has broad discretion to determine the procedures for calculating the amount of restitution. *See United States v. Minneman*, 143 F.3d 274, 284 (7th Cir. 1998). We have encouraged—but not required—district courts to articulate detailed findings of fact in support of their restitution awards. *Id.* at 285.

In general, the USPO calculates the amount of tax loss using evidence admitted at trial and then recom-

mends this amount for restitution in its PSR. As we have stated,

> A district court may rely on the PSR in ruling on factual issues in the sentencing context as long as the PSR is based upon sufficiently reliable information. When the court relies on information contained in the PSR at sentencing, it is the defendant's burden to show that the PSR is inaccurate or unreliable. When a defendant has failed to produce any evidence calling the report's accuracy into question, a district court may rely entirely on the PSR.

*United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007) (internal quotation marks and citations omitted). Although the loss under the sentencing guidelines refers to the intended loss and the loss under restitution refers to the actual loss, the method of calculation is related. *See United States v. Copus*, 110 F.3d 1529, 1537 (10th Cir. 1997).

In this case, the district court adopted the PSR's conclusions in their entirety. The PSR arrived at an amount of restitution ($997,582.98) based on a tax amount owed of $593,557, representing actual loss, plus interest until the date of sentencing hearing. Hassebrock contends that his tax liability is approximately $1,600, but he provides no evidence in support of this assertion.[5] In contrast, the PSR

---

[5] Hassebrock claims to have asserted in his Objections to the PSR that his 2004 return should be approximately $1,600. However, that document argued that his 2005 tax computation

(continued...)

relied on IRS determinations, bank records, and third party interviews to support its classifications of the income earned in 2004. The PSR's estimate was conservative in treating the majority of the checks made out to the Hassebrocks as allowable business expenses. The district court acted well within its discretion in calculating restitution based on the PSR's estimate and the evidence introduced at sentencing.

Therefore, with the possible exception of the basis for ordering restitution, the district court imposed a sentence that was procedurally proper, substantively reasonable, and statutorily authorized.

### III.  Conclusion

For the foregoing reasons, the order of restitution is VACATED, and the case is REMANDED for further proceedings consistent with this opinion. In all other respects, the district court's judgment is AFFIRMED.

---

[5] (...continued) should be $1,602. In reference to his 2004 return, Hassebrock stated simply "Objection to the 2004 tax computation."